# BELLAVIA GENTILE
## & ASSOCIATES, LLP
ATTORNEYS AT LAW

200 OLD COUNTRY ROAD • SUITE 400
MINEOLA, NEW YORK 11501
www.DealerLaw.com

TELEPHONE 516-873-3000
FACSIMILE 516-873-9032

LEONARD A. BELLAVIA
JOHN G. GENTILE

STEVEN H. BLATT
WARREN S. DANK△○
WILLIAM R. BRUNNER†
MICHAEL S. CIACCIO
MATTHEW DAVID BROZIK△
BARRY M. WEISS

△ Also admitted in New Jersey
○ Also admitted in Connecticut
† Admitted only in New Jersey

Counsel
KENNETH F. McCALLION
THOMAS A. HOLMAN
KEVIN MALDONADO
MARK W. GAFFNEY
JANE K. CRISTAL
PETER D. BARON
GAIL M. BLASIE

November 23, 2010

VIA ECF AND REGULAR MAIL
Honorable Leonard D. Wexler
United States District Court – Eastern District of New York
Long Island Federal Courthouse
944 Federal Plaza
Central Islip, New York 11722

      Re:  Eagle et. al. v. Chrysler Group LLC
           CV 2:10-CV-03876

Dear Judge Wexler:

      This firm represents plaintiffs ("Plaintiffs") in the above-referenced action. We write, pursuant to paragraph 2(B) of Your Honor's Individual Amended Rules, requesting a pre-motion conference to discuss Plaintiffs' intention to file a motion, pursuant to the Federal Rules of Civil Procedure, Rules 16, 42(b)[1] and

---

[1] The factors that the courts consider in deciding whether to grant a speedy hearing, pursuant to Rule 57, are substantially similar to the factors the courts consider in deciding whether to grant motion for a separate or bifurcated trial under Rule 42(b). These Rule 42(b) factors include, but are not limited to: (1) whether there is a significant difference between the issue(s) to be tried separately and the other claims; (2) whether resolution of the issue(s) could simplify or dispose of a case; (3) whether the issues are triable to the court or before a jury; (4) whether discovery as to the respective issues suggests that they should be tried separately; (5) whether the issues will require the production of different witnesses or physical evidence; and (6) whether the non-moving party will be prejudiced if the motion is granted. See *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F.Supp. 127 (S.D.N.Y. 1988) (Goettel, J.); *Reading Industries, Inc. v. Kennecott Copper Corp.*, 61 F.R.D. 662 (S.D.N.Y. 1974) (Lasker, J.). Federal Rule of Civil Procedure Rule 57 expressly provides, in relevant part, that "...[t]he court may order a speedy hearing of a declaratory-judgment action." Factors that the courts consider in deciding whether to grant a speedy hearing are, *inter alia*: a) the declaratory proceeding involves issues that are conducive to "prompt resolution...consistent with the interests of justice and the rights of all parties to due process of law"; b) the declaratory judgment claim does not involve difficult or complex issues; c) the declaratory judgment claim is discrete and does not significantly overlap with the other claims; c) extensive discovery is not required; d) an early hearing on the declaratory judgment claim could resolve the other claims between the parties and could thereby expedite the litigation and promote judicial economy; e) without a speedy hearing on the dispositive declaratory judgment claim, the plaintiffs will be prejudiced by having to spend time, resources, and money on other issues that could have been resolved by a quick determination of the declaratory judgment claim. See *U.S. v. Stein*, 452 F. Supp.2d 230, 270-271 (S.D.N.Y. 2006), *vacated on other grnds*, 486 F.3d 753 (2d Cir. 2007).

57, for an order: (a) severing and/or bifurcating the parties' claims seeking declaratory relief (*i.e.*, Plaintiff's Third Claim for Relief and that portion of Chrysler's Counterclaim that seeks a declaration that it has complied with Section 747 of the Consolidated Appropriations Act of 2010 by providing Plaintiffs with a customary and usual letter of intent to enter into a sales and service agreement (the "Declaratory Judgment Claims"); (b) directing an abbreviated discovery schedule with respect to the above-referenced limited issues raised by the Declaratory Judgment Claims and; (c) setting forth an expedited briefing schedule for the filing of summary judgment motions by the parties so that these limited issues can be resolved expeditiously and economically.

**Background Facts and Procedural History** - The Plaintiffs received notice from Chrysler's bankrupt predecessor that their Chrysler dealership Sales and Service Agreements would be terminated as of June 9, 2009. Pursuant to Section 747 of the Consolidated Appropriations Act of 2010 (the "Act)") the Plaintiffs filed demands for arbitration with the American Arbitration Association to get their dealerships back. Pursuant to the Act, any dealer who should not have been shut down by Chrysler was given a chance, through arbitration, to unwind the wrongful termination. Understanding that dealers could not wait indefinitely for the reinstatement of their dealerships, the Act's mandate for **the expedited conduct** of the reinstatement arbitrations was clear and intentional.[2] Indeed, as demonstrated by the attached November 18, 2010 letter from Congressman Steven LaTourette and Tim Bishop (Exhibit A), **two of the Congressional authors of the Act, dealers that were victorious in their reinstatement arbitrations against Chrysler were to be reinstated "without delay."**

Despite the clear purpose of the Act (i.e., the quick reinstatement of wrongfully terminated dealers), Chrysler has purposely frustrated the quick reinstatement of the Plaintiffs' dealerships. Indeed, as a condition to reinstatement, Chrysler has demanded that Plaintiffs satisfy numerous new and onerous provisions criteria that did not pertain to the Plaintiffs' dealerships prior to their wrongful termination. This "road block" to reinstatement was created by Chrysler in order to frustrate the intent of the Act and avoid the obligation to restore Plaintiffs. **Again, as demonstrated by the attached November 18, 2010 letter from Congressman Stevn LaTourette and Tim Bishop (Exhibit A), two of the Congressional authors of the Act, it was never the intention of Congress, in promulgating and passing the Act, that Chrysler "[c]ould impose costly, burdensome or punitive requirements on the winning party as part of a sales and service agreement or letter of intent;" "that covered dealerships that prevailed in arbitration be reinstated, period, not reinstated with a huge asterisk and laundry list of conditions;" and that "dealers that prevailed in arbitration, [should be reinstated] without delay and with no costly, reinstatement-killing strings attached." See also July 28, 2010 Letter of Congressman Bishop attached as Exhibit B.** It is quite telling that not one Chrysler dealer that was assumed by Chrysler in its bankruptcy proceeding was required to meet the conditions contained in Chrysler's "Letter of Intent" that are a prerequisite to the Plaintiffs' reinstatement.

Based upon Chrysler's actions, Plaintiffs have commenced the within action. The crux of Plaintiff's complaint is delineated in Plaintiffs' Third Claim for Relief which seeks (a) a declaration from the Court as to whether Chrysler has intentionally, knowingly and willfully violated the Act by demanding that each Plaintiff satisfy numerous new and onerous criteria that never pertained to Plaintiffs' franchises prior to their termination in Chrysler's bankruptcy and (b) an order or injunction directing Chrysler to comply with the Act, by unconditionally reinstating each of the Plaintiffs. Chrysler has answered Plaintiffs' Complaint and asserted a singular Counterclaim seeking a declaration from the Court that provides, in relevant part, that "Chrysler has complied at all times with the Act, including *inter alia* by providing each

---

[2] In order to provide for the rapid hearing of each rejected dealership's case, the Act: (a) provided that a "covered dealership" had only forty (40) days after the enactment of the federal legislation within which to demand arbitration; (b) required that each and every case be submitted to an arbitrator within only 180 days of the enactment of the legislation; (c) required the arbitrator to issue a written determination only seven business days after submission; and (d) if the arbitrator found in favor of a covered dealership, the covered manufacturer was required, as soon as practicable, but not later than 7 business days after the receipt of the arbitrator's determination, provide the dealer with a customary and usual letter of intent to enter into a sales and service agreement.

Counterclaim Defendant with the customary and usual letter of intent to enter into a sales and service agreement required by the Act." Respectfully, Chrysler's Counterclaim is, in relevant part, merely the mirror image of Plaintiffs' Third Claim for Relief.

**The Necessity for the Within Request for Pre-Motion Conference -** On November 19, 2010, Plaintiffs forwarded, pursuant to the September 1, 2010 order of Magistrate Boyle, to Chrysler's counsel Plaintiffs' proposed Civil Case Management Plan and Scheduling Order (the Scheduling Order"), a copy of which is attached as Exhibit C. The proposed Scheduling Order seeks the consent of Chrysler's to the bifurcation and expedited resolution (either by means of summary resolution pursuant to Fed. R. Civ. P. 56, or a separate trial (Fed. R. Civ. P. 42) and speedy hearing (Fed. R. Civ. P. 57)) of the Declaratory Judgment Claims. Plaintiffs have not received a response to its proposed Scheduling Order, necessitating the within pre-motion conference letter request. Simply stated, Chrysler has now frustrated the quick reinstatement and continuation of Plaintiffs' automobile franchises as required by the Act for 18 months and, respectfully, the expedient resolution of this action is imperative.

As stated above, Plaintiffs intend to file a motion, pursuant to the Federal Rules of Civil Procedure, Rules 16, 42(b) and 57, (a) severing and/or bifurcating the Declaratory Judgment Claims, (b) directing an abbreviated discovery schedule with respect to these limited issues (as set forth in Plaintiffs' proposed scheduling Order) and (c) setting forth an expedited briefing schedule for summary judgment motions to be filed by the parties so that these very limited issues can be resolved in an expeditious and economic manner. As will be shown more fully in Plaintiffs' motion papers, convenience and economy call for a speedy and separate trial of the Declaratory Judgment Claims. These issues are strictly legal in character and their resolution would entail this Court's statutory interpretation of the Act and a concomitant determination as to whether Chrysler has complied with or violated the Act. These discrete issues are common to all of the Plaintiffs. **Importantly, each of the Plaintiffs' remaining claims (as well as the remaining ancillary declaratory relief requested by Chrysler in its Counterclaim) rises and falls on this Court's determination of the Declaratory Judgment Claims**. As such, this Court's determination of these linchpin issues in a separate and speedy trial could resolve most, if not all, of the parties' remaining claims and, depending on the outcome, could promote the expeditious settlement of and/or termination of the entire action. Indeed, if the Court somehow adopts Chrysler's interpretation of the Act, and its contention that it has not violated the Act, Plaintiff's remaining claims may be quickly and easily disposed of. In contrast, if the Court adopts Plaintiffs' interpretation of the Act, and their contention that Chrysler has violated the Act, it is respectfully submitted that (a) the ancillary declaratory relief requested by Chrysler in its Counterclaim falls by the wayside and (b) the remaining severable, distinct fact-based, varying, individual damages claims raised by Plaintiffs in their Complaint can be subsequently and separately tried by this Court. Numerous other factors favor the severance of the Declaratory Judgment Claims and their quick determination, including that (a) the interpretation of the Act is primarily a legal question that can be tried by the court via summary judgment motions filed by the parties, (b) discovery concerning the interpretation of the Act would be extremely limited and can be accomplished in an expedited manner, (c) the legal questions and proof (witnesses and documentary evidence) relevant to the Court's interpretation of the Act are sufficiently different from and unrelated to the factual questions and proof (witnesses and documentary evidence) relevant to the Plaintiffs' varying and individual damage claims, (d) bifurcation and/or severance of these limited issues would facilitate the resolution of the entire litigation because the parties remaining claims rise and fall based upon this Court's interpretation of the Act, and (e) Chrysler will not be prejudiced if the Plaintiffs' motion were to be granted while, in contrast, Plaintiffs' will be greatly prejudiced by a prolonged and drawn out litigation. As such, it is respectfully requested that the Court schedule, as soon possible, a pre-motion conference to discuss a briefing schedule with respect to Plaintiffs' intended motion.

Respectfully submitted,

BELLAVIA GENTILE & ASSOCIATES, LLP

By: _____
LEONARD A. BELLAVIA (LAB0780)

CC: Magistrate E. Thomas Boyle (Via ECF and Regular Mail)
    George Mykulak, Esq. (Via email)

# Congress of the United States
## Washington, DC 20515

November 18, 2010

Mr. Mark Calisi
President and CEO
Eagle Auto Mall Corp
1320 Old Country Road
Riverhead, NY 11901

Dear Mr. Calisi,

    Thank you for contacting us with concerns about reinstatement issues stemming from the binding arbitration process created in Sec. 747 of PL 111-117. As one of the authors of this legislation and as one of the supporters of the legislation, we are troubled that despite prevailing in arbitration, Chrysler is now pressing you to build a new, stand-alone facility to sell Chrysler and Jeep vehicles as a condition of reinstatement. You indicated that the new facility to replace your current, nearly new facility could cost $8 million, including $6 million for four acres of new property.

    After your victory in arbitration, it appears that Chrysler is putting up major roadblocks to your reinstatement, and will not allow you to sell new Jeeps or Chrysler vehicles until a separate new facility is completed and subsequently approved by Chrysler. We realize you have gone 18 months without new Jeep or Chrysler vehicles, and the jobs of 100 people at your facility are at risk.

    As you know, Section 747 allowed dealers slated to close to take GM or Chrysler to arbitration. More than 1,500 dealers filed for arbitration, but fewer than 170 cases went through the entire process to a ruling. It is our belief that automakers, not dealers, prevailed in nearly 70 percent of all arbitration rulings.

    It was never my intent that the losing party in arbitration could impose costly, burdensome or punitive requirements on the winning party as part of a sales and service agreement or letter of intent. The law is clear that the arbitrator could not award compensatory, punitive, or exemplary damages to any party. The law is also clear that no later than 7 days after an arbitration decision that favors a dealer, the automaker must provide the dealer "a customary and usual letter of intent to enter into a sales and service agreement."

    We voiced great concerns about the treatment of dealers in bankruptcy and spent months working on legislation to help dealers. It's an absurd notion that I would strive to create a binding arbitration process that would punish dealers that prevailed, and permit automakers that lost to run roughshod over dealers that won. I believe the conditions Chrysler is attempting to impose on you amount to a tortured and arrogant interpretation of the law, and a clear violation of its spirit. I intended that covered dealerships that prevailed in arbitration be reinstated, period, not reinstated with a huge asterisk and laundry list of conditions.

The arbitrator who heard this case acknowledged tensions between you and Chrysler over the years, but found that your "transgressions did not appear to be reasonable grounds to terminate" your franchise. Perhaps most importantly, the arbitrator noted in his ruling he has no authority to rule that you build a new facility for Chrysler and Jeep vehicles.

As you know, under the new law, there were ample opportunities for dealers and automakers to reach individual settlements rather than proceed through arbitration. In those cases both parties agreed to certain terms, like a dealer agreeing to renovate/build a new facility, or a dealer taking a financial settlement to surrender a franchise. This is a path that many dealers chose, but you elected to pursue arbitration. I firmly believe the automakers should follow the law as I intended and reinstate dealers that prevailed in arbitration, without delay and with no costly, reinstatement-killing strings attached.

Sincerely,

Steven C. LaTourette
Member of Congress

Tim Bishop
Member of Congress

TIMOTHY H. BISHOP
1ST DISTRICT, NEW YORK

COMMITTEE ON THE BUDGET

COMMITTEE ON EDUCATION
AND LABOR

COMMITTEE ON TRANSPORTATION
AND INFRASTRUCTURE

# Congress of the United States
## House of Representatives
### Washington, DC 20515-3201

306 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-3826
FAX: (202) 225-3143

3680 ROUTE 112, SUITE C
CORAM, NY 11727
(631) 696-6500
FAX: (631) 696-4520

www.house.gov/timbishop

July 28, 2010

Peter Grady
Vice President, Network Development & Fleet
Chrysler Group, LLC
1000 Chrysler Drive
Auburn Hills, MI 48326

Dear Mr. Grady:

I write regarding the attempt by Chrysler Group, LLC to subvert the franchise reinstatement of Eagle Auto Mall Corp. in Riverhead, New York following binding arbitration.

After its franchise agreement was revoked amid bankruptcy proceedings last year, Eagle Auto Mall sought to reinstate its franchise agreement through binding arbitration, as provided in Section 747 of the Consolidated Appropriations Act of 2010. Arbitrator Larry Biblo of the American Arbitration Association ruled in favor of Eagle Auto Mall, stating in his written determination on June 23, 2010 that Eagle Auto Mall "shall be renewed."

The letter of intent Chrysler issued to Eagle Auto Mall dictating the conditions necessary for reinstatement is remarkably one-sided and restrictive. It implies that Chrysler has no intention of abiding by the arbitrator's decision and will make it as difficult as possible for dealers to be reinstated in the hopes they will simply abandon their effort. Your obstructionist position coupled with the blatant disregard for the will and intent of Congress is unacceptable.

Chrysler has reversed its dismal financial situation as a direct result of the infusion of billions of dollars in taxpayer aid from the federal government. I would expect a company that was rescued by the federal government to comply with the law and reinstate dealerships accordingly, as determined by arbitration, especially for Chrysler sellers with a proven record of success such as Eagle Auto Mall.

Furthermore, in order to have originally sold Chrysler vehicles, Eagle Auto Mall had to meet the standards set forth by Chrysler, which it did. There is no reason that newer requirements must be fulfilled to restart franchises unfairly terminated or for Chrysler to place impediments that would prevent Eagle Auto Mall from once again successfully selling Chrysler brand vehicles on the East End of Long Island.

I strongly urge Chrysler to reconsider its position and reinstate Eagle Auto Mall and other successful dealerships without delays or barriers. Thank you for your attention and consideration of this request. I look forward to your response.

Sincerely,

Tim Bishop
Member of Congress

**sblatt**

Exhibit C

**From:** John Gentile [JGentile@DealerLaw.com]
**Sent:** Friday, November 19, 2010 1:40 PM
**To:** 'Mykulak, George'
**Cc:** 'sblatt'
**Subject:** FW: Message from KMBT_600

George, please see the attached. Thanks, John G.

**From:** konica@dealerlaw.com [mailto:konica@dealerlaw.com]
**Sent:** Friday, November 19, 2010 1:17 PM
**To:** jgentile@dealerlaw.com
**Subject:** Message from KMBT_600

11/23/2010

# BELLAVIA GENTILE & ASSOCIATES, LLP
## ATTORNEYS AT LAW

200 OLD COUNTRY ROAD • SUITE 400
MINEOLA, NEW YORK 11501
www.DealerLaw.com

TELEPHONE 516-873-3000
FACSIMILE 516-873-9032

LEONARD A. BELLAVIA
JOHN G. GENTILE

STEVEN H. BLATT
WARREN S. DANK △○
WILLIAM R. BRUNNER†
MICHAEL S. CIACCIO
MATTHEW DAVID BROZIK △
BARRY M. WEISS

△ Also admitted in New Jersey
○ Also admitted in Connecticut
† Admitted only in New Jersey

Counsel

KENNETH F. McCALLION
THOMAS A. HOLMAN
KEVIN MALDONADO
MARK W. GAFFNEY
JANE K. CRISTAL
PETER D. BARON
GAIL M. BLASIE

November 19, 2010

Sent Via E-Mail only– george.mykulak@wilmerhale.com

George Mykulak, Esq.
WilmerHale
60 State Street
Boston, MA 02109 USA

Re:   Eagle Auto Mall, et al. v. Chrysler Group, LLC
      Civil Case Management Plan And Scheduling Order
      Civil Action No.: 2:10-CV-03876 (LDW)(ETB)

Dear George:

Pursuant to the order of Magistrate Boyle dated September 1, 2010, I attach plaintiff's proposed Scheduling Order. Please contact me as soon as possible so that we may discuss any potential comments you may have in order to promptly file same with the Court.

Very truly yours,

BELLAVIA GENTILE & ASSOCIATES, LLP

BY: _____
    JOHN G. GENTILE, ESQ.

cc. Nicole.Feit@wilmerhale.com

NEW JERSEY    MANHATTAN    LONG ISLAND    WINDHAM    CONNECTICUT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EAGLE AUTO MALL CORP., TERRY CHRYSLER
JEEP, INC., JHS BUSINESS ASSOCIATES INC. D/B/A
CROSSROADS SUPERSTORE, and WESTMINSTER
DODGE, INC.

CIVIL ACTION NO.
2:10-CV-03876
(LDW)(ETB)

                            Plaintiffs,        CIVIL CASE MANAGEMENT
                                           PLAN AND SCHEDULING ORDER

      -against-

CHRYSLER GROUP, LLC,

                            Defendant.
------------------------------------------------------------------X

LEONARD D. WEXLER, U.S.D.J.
E. THOMAS BOYLE, U.S.M.J.

     After consultation with counsel for the parties, the Court adopts the following Civil Case Management Plan and Scheduling Order, in accordance with Federal Rules of Civil Procedure 16 and 26(f).

1. All parties do not consent to conducting further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).

2. This case is to be tried to a jury.

3. No additional parties may be joined except with leave of the Court. Except for good cause shown, any motion to join additional parties must be filed within 15 days from the date of this Order.

4. A party may not amend its pleadings except with leave of the Court. Except for good cause shown, any motion to amend pleadings must be filed within 15 days from the date of this Order.

5. The parties must complete their initial disclosures under Federal Rule of Civil Procedure 26(a)(l) no later than 14 days from the date of this Order.

6. Subject to paragraph 7 herein below, the parties agree to bifurcation, expedited discovery and expedited resolution (either by means of summary resolution pursuant to Fed. R. Civ. P. 56, or a separate trial (Fed. R. Civ. P.

{00021419-1}

42) and speedy hearing (Fed. R. Civ. P. 57)), on Plaintiffs' Third Claim for Relief for a declaratory judgment and implementing order or injunction directing Chrysler to comply with the Consolidated Appropriations Act of 2010 (the "Act") and that portion of Chrysler's counterclaim that seeks a declaration that it has complied with the Act (collectively the "Declaratory Judgment Claims").

7. Chrysler specifically reserves all rights and remedies with respect to its pending motion to transfer venue. In addition, to the extent any of the relief provided in paragraph 6 above requires approval from the District Judge, then the parties agree to promptly seek the District Judge's approval thereof. Moreover, the parties shall initiate steps to file any summary judgment motions on the Declaratory Judgment Claims by no later than February 14, 2011.

8. If all parties consent in writing, they may extend the following interim deadlines without application to the Court, provided that the parties complete all bifurcated discovery by the date set forth in paragraph 6. Under this Order's interim deadlines, the parties must:

 a. Serve initial requests for production of documents and interrogatories by December 10, 2010. All responses, and all responsive and non-privileged responsive documents and information, are due within twenty (20) days of service of any discovery requests ("Initial Discovery Responses").

 b. Complete depositions of fact witnesses, including non-party witnesses, by January 24, 2011.

    i. Unless the parties agree or the Court so orders, the parties may not hold depositions until all parties have provided their Initial Discovery Responses.

    ii. There is no priority in deposition by reason of a party's status as plaintiff or defendant.

9. Expert Testimony: If all parties consent in writing, they may extend the following interim deadlines without application to the Court, provided that the parties complete all expert discovery by the date set forth in paragraph 6.

 a. The parties do not currently anticipate utilizing expert testimony on the Declaratory Judgment Claims, but reserve all rights with respect to possible expert testimony, and set forth the following schedule in connection therewith.

    b.    Any case-in-chief expert reports and disclosures shall be served by January 17, 2010.

    c.    Any rebuttal reports and disclosures shall be served by January 31, 2010.

    d    The parties may conduct expert depositions at any time subsequent to the service of expert reports, including prior to the January 31, 2010 discovery cutoff and prior to any deadline established for the submission of any pre-trial or pre-hearing disclosures or submissions or markings to the District Court, provided that the foregoing does not cause any delay of the February 14, 2011 deadline to initiate steps to file summary judgment motions, and further provided that the foregoing does not cause any delay of any expedited trial or hearing established by the District Court.

10.    Settlement: No later than 14 days following the close of fact discovery on the Declaratory Judgment Claims, all counsel must meet face-to-face for at least one hour to discuss settlement.

11.    Unless otherwise ordered by the Court, within 30 days from the date for the completion of discovery in a civil case or, if a party has filed a dispositive motion, then within 30 days of a decision resolving the motion, the parties shall submit to the Court for its approval a joint pretrial order, with respect to the Parties' Claims for Declaratory Relief, prepared in accordance with the Court's Individual Practices and Federal Rule of Civil Procedure 26(a)(3).

12.    Counsel for the parties have conferred and their present best estimate of the length of a trial or hearing with respect to the Declaratory Judgment Claims is 3-5 days.

13.    Unless otherwise ordered by the District Court in connection with the foregoing bifurcated and expedited proceedings, and without prejudice to the parties' right to seek an earlier trial or hearing, at the close of discovery with respect to the Declaratory Judgment Claims, if a party has filed a dispositive motion, then within 30 Days of a decision resolving the motion, the Court will set a Ready Trial Date with respect to the Declaratory Judgment Claims. At any time on or after the Ready Trial Date, the Court may call the parties to trial upon 48 hours' notice. Therefore, counsel must notify the Court and their adversaries in writing of any potential scheduling conflicts including, but not limited to, trials and vacations-that would prevent a trial at a particular time. Such notice must come before the Court notifies counsel of an actual trial date, not after counsel receives notification of the actual trial date. Counsel should notify the Court and all other counsel in writing, at the earliest possible time, of any scheduling problems involving out-of-town witnesses or other exigencies.

14.    Where the parties resolve the case before the entry of judgment, they must

submit a stipulation of discontinuance-- signed by all parties--before the Court will remove the case from the trial calendar. If the parties settle within 48 hours of trial or the filing of a dispositive motion, they **must** immediately notify the Court of such settlement, and fax to the Court no less than 36 hours before their planned appearance, a stipulation of discontinuance, signed by all parties.

**TO BE COMPLETED BY THE COURT:**

15. Other directions to the parties:

16. The Final Pretrial Conference with respect to with respect to the Declaratory Judgment Claims is scheduled for _____.

This ORDER may not be modified or the dates herein extended, except by further Order of this Court for good cause shown, Any application to modify or extend must be made in a written application in accordance with paragraph 1(E) of the Court's Individual Practices and must be made no less than five (5) days before the expiration of the date sought to be extended.

Dated: New York, New York
November ___, 2010

SO ORDERED

_____
E. THOMAS BOYLE
United States Magistrate Judge