# BELLAVIA GENTILE
## & ASSOCIATES, LLP
ATTORNEYS AT LAW

200 OLD COUNTRY ROAD • SUITE 400
MINEOLA, NEW YORK 11501
www.DealerLaw.com

TELEPHONE 516-873-3000
FACSIMILE 516-873-9032

LEONARD A. BELLAVIA
JOHN G. GENTILE
STEVEN H. BLATT
MICHAEL S. FINZ

Counsel
KENNETH F. McCALLION
THOMAS A. HOLMAN
MARK W. GAFFNEY
JANE K. CRISTAL
PETER D. BARON
GAIL M. BLASIE

March 10, 2011

VIA ECF
Magistrate Judge E. Thomas Boyle
United States District Court – Eastern District of New York
Long Island Federal Courthouse
100 Federal Plaza
Central Islip, New York 11722

   Re: Eagle et. al. v. Chrysler Group LLC
     CV 2:10-CV-03876

Dear Magistrate Judge:

  This firm represents plaintiffs ("Plaintiffs") in the above-referenced action. Plaintiffs submit this letter application, pursuant to Paragraph 2(A) of Your Honor's Individual Motion Practices and Local Civil Rule 37.3, for an order compelling defendant Chrysler Group LLC ("Chrysler") to fully produce the documents responsive to Document Requests #s 9, 12 through 17 and 25 through 28[1] contained in Plaintiffs' First Document Demand dated January 14, 2011 ("Plaintiffs' Document Demands").[2]

---

[1] Defendant has objected to Document Requests #s 9, 12 through 17 and 25 through 28 on the grounds that they purportedly, among other things, (a) are not reasonably calculated to lead to the discovery of admissible evidence and (b) seek information that is neither relevant to the parties' claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence. However, Plaintiffs' Document Demand is specifically tailored to elicit information and documentation concerning the parties' claims and defenses. Furthermore, F.R.C.P. 26(b)(1) provides, in pertinent part that: "Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim or defense*-- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of *any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.* (Emphasis added)." "The [above-quoted federal] rule has been liberally construed." *Lyondell-Citgo Refining, LP v. Petroleos De Venezuela, S.A*, 2004 WL 2698218 (S.D.N.Y. 2004). It is well-settled within the Second Circuit that the above-quoted federal rule will be satisfied if there is any possibility that the information sought may be relevant to the subject matter of the action. *Id., quoting Mallinckrodt Chem. Works v. Goldman Sachs & Co.*, 58 F.R.D.248, 353 9S.D.N.Y. 1973). Indeed, "in federal actions, discovery should be broad, and all relevant materials which are reasonable calculated to lead to the discovery of admissible evidence should be [discoverable]." *Id. See Morse/Diesel, Inc. v. Fidelity and Deposit Company of Maryland*, 122 F.R.D. 447 (S.D.N.Y. 1988).

[2] As demonstrated by the attached exhibits, Plaintiffs attempted, pursuant to Local Civil Rule 37.3(a), in good faith, to resolve the parties' discovery dispute prior to seeking the Court's intervention. See: (a) Plaintiffs' January 14, 2011 Document Demands (Exhibit A); (b) Chrysler's February 17, 2011 Responses to Plaintiffs' Document Demands (Exhibit B); (c) Plaintiffs' February 22, 2011 letter to Chrysler's counsel (Exhibit C); (d) Chrysler's counsel March 1, 2011 email ( Exhibit D); (e) our office's March 3, 2011 letter to Chrysler's counsel (Exhibit E) and (f) Chrysler's counsel's March 9, 2011 letter (Exhibit F).

The plaintiffs are four former Chrysler dealerships whose Sales and Service Agreements were terminated as part of "Old Chrysler's" bankruptcy proceeding. Thereafter, pursuant to Section 747 of the Consolidated Appropriations Act of 2010 (the "Act"), each of the plaintiffs won back their dealerships via arbitrations with Chrysler. The crux of the within action concerns, among other things, (a) whether intent of the Act was to restore previously rejected dealers to the same position as they were prior to Old Chrysler's bankruptcy filing and (b) whether Chrysler has violated the Act by seeking to impose new, restrictive and burdensome terms and conditions upon reinstated dealers such as the Plaintiffs. Indeed, Chrysler has demanded that Plaintiffs execute a "Letter of Intent" that includes numerous new and onerous provisions and criteria that did not pertain to the Plaintiffs' dealerships prior to their wrongful termination. Specifically, Chrysler has demanded, in their "Letter of Intent" that the Plaintiffs must waive certain rights that may be provided it under applicable state motor vehicle franchise statute such as protest rights that it may possess in the event that a new dealer is added in the Plaintiffs' market area; Chrysler will not provide Plaintiffs with any new Chrysler motor vehicles for sale to the general public unless and until Plaintiffs complete a facility renovation in a manner that has been solely prescribed by Chrysler; and Plaintiffs must provide Chrysler with an option to lease or purchase the Plaintiff's dealership facility. Even more egregious, and quite telling, is that not one Chrysler dealer that was assumed by Chrysler in its bankruptcy proceeding was required to meet the conditions contained in Chrysler's "Letter of Intent" that are a prerequisite to the Plaintiffs' reinstatement.

As such, Plaintiffs have requested the production of documents concerning any and all agreements or contracts, including, but not limited to, draft agreements and amended agreements between Chrysler, on the one hand, and any of Chrysler's current new motor vehicle dealers or any dealer applicant or candidate, on the other hand, concerning (a) the renovation or construction of dealership facilities (Requests # 12 and 13), (b) a Chrysler' dealer's obligation or duty to waive certain rights that may be provided it under an applicable state motor vehicle franchise statute such as protest rights that it may possess in the event that a new dealer is added in such dealer's market area (Requests # 14 and 15), and (c) a Chrysler' dealer's obligation or duty to provide Chrysler with an option to lease or purchase such dealer's dealership facility (Requests # 16 and 17). Essentially, Chrysler has advised Plaintiffs that it will not produce all "agreements" responsive to these requests (See Exhibit F) and will only produce "'agreements' in the form of signed open point LOIs [Letters of Intent]" purportedly because the Act only requires Chrysler to provide a customary and usual Letter of Intent. It is respectfully submitted that, in an attempt to limit its production of responsive materials, Chrysler has taken an absurdly narrow view of exactly what is relevant. Although Chrysler has attempted to strategically seize upon the statute's use of the term "Letter of Intent," it cannot be disputed that Chrysler has used other forms or types of agreements for the same purpose. Stated otherwise, it is clear that "signed open point LOIs" are not the only form or type "agreements" utilized by Chrysler to set forth the terms and conditions of the parties franchisor/franchisee relationship. The responsive "agreements" must include any type or form of "agreement" or document utilized by Chrysler and its dealers to set forth the terms and conditions of the parties franchisor/franchisee relationship - be it Sales and Service Agreements, Letters of Intent, side letters, amendments, or addenda. The absence of a "Letter of Intent" for any of the over two thousand dealerships assumed by Chrysler in "Old Chrysler's" bankruptcy proceeding does not mean that Chrysler did, or did not, impose (in another type or form of industry document) similar conditions as those demanded by Chrysler in the Letters of Intent provided by Chrysler to Plaintiffs. Without the production of these other forms or types of responsive "agreements" it may not be possible for Plaintiffs to demonstrate whether any of Chrysler's current dealers are subject to similar conditions as those demanded by Chrysler (in the Letters of Intent provided by Chrysler to Plaintiffs) to be satisfied by Plaintiffs as a condition to their reinstatement. Despite Chrysler's objections to the contrary, the above requests seek to elicit information concerning numerous specific allegations contained in both Plaintiffs' Complaint (ECF Docket # 1) and Chrysler's Counterclaim (ECF Docket # 6)[3]: Simply stated, Requests #s 12 through 17 are specifically tailored to elicit information and

---

[3] (a) Paragraph 45 of Plaintiff's Complaint – "While the Act does not define or set any parameters as to the meaning of "customary and usual letter of intent," Chrysler's Letter of Intent is neither customary or usual in each of the following ways: the Plaintiffs must waive certain rights that may be provided it under applicable state motor vehicle franchise

documentation concerning whether any of Chrysler's current new motor vehicle dealers or any dealer applicant or candidate were or are subject to similar conditions as those demanded by Chrysler to be satisfied by Plaintiffs as a condition to their reinstatement.

Through Requests 9 and 25 through 28, Plaintiffs have requested the production of (a) documents or communications between Chrysler and either General Motors or any congressional member or staffer that concern the letter of intent, the Act, or any proposed legislation to restore dealer rights or reinstate dealers (Requests # 9, 25 and 28) , and (b) all internal Chrysler documents, including documents maintained with any Chrysler legislative affairs department, that concern the Act, or any proposed legislation to restore dealer rights or reinstate dealer (Requests # 26 and 27). Chrysler's counsel's March 1, 2011 email, however, provides that Chrysler will only produce documents responsive to these particular requests that were "created after the enactment of the Act." Chrysler has provided no explanation for its refusal to produce responsive documents created prior to the Act's enactment. First, Requests #s 25 through 28 are clearly relevant to the party's claims or defenses and, at a minimum, are reasonably calculated to lead to the discovery of admissible evidence as they were specifically tailored to elicit information and documentation in Chrysler's possession concerning the letter of intent, the Act, or any proposed legislation to restore dealer rights or reinstate dealers.[4] Furthermore, the Plaintiffs' dealership Sales and Service (franchise) Agreements were terminated as of June 9, 2009 and the Act was enacted barely six (6) months later in December 2009. Accordingly, the production of documents responsive to Requests #s 9 and 25 through 28 that were created between June and December 2009 cannot be unduly burdensome. For all the foregoing reasons, it is respectfully requested that Plaintiffs' application for an order compelling Chrysler to produce the documents responsive to Document Requests #s 9, 12 through 17 and 25 through 28 contained in Plaintiffs' Document Requests, be granted in its entirety.

---

statute such as protest rights that it may possess in the event that a new dealer is added in the Plaintiffs' market area; Chrysler will not provide Plaintiffs with any new Chrysler motor vehicles for sale to the general public unless and until Plaintiffs complete a facility renovation in a manner that has been solely prescribed by Chrysler; Plaintiffs must provide Chrysler with an option to lease or purchase the Plaintiff's dealership facility; and Chrysler's proposed Letter of Intent indicates that, prior to entering into a sales and service agreement with any of the Plaintiffs, Chrysler would "give notice to the state and/or dealers as may be required by state law," even though the Act preempts state law on the issue of such a challenge and affords no third party with any putative right to challenge the reinstatement of a prevailing dealer. (Emphasis added); (b) Paragraph 54 of Plaintiff Complaint provides "Upon information and belief, the above-referenced provisions demanded by Chrysler to be included in its Letter of Intent have solely been required of dealers who sought and won the reinstatement of their dealerships through arbitration under the Act." (c) Paragraph 3 of Defendant's own Counterclaim provides that "The Letter of Intent provided to each Counterclaim Defendant ("LOI") contains customary and usual conditions relating to dealer qualifications and operational prerequisites, including without limitation, **the** provision of a satisfactory exclusive location and facility, meeting certain financial requirements, and the compliance of Chrysler Group with state franchise laws requiring inter alia notice to and the opportunity to be heard by existing like-line dealers in the relevant market area where the additional dealer is to be established." (Emphasis added); and (d) Paragraph 36 of Chrysler's own Counterclaim provides that "The LOI contains customary and usual conditions relating to dealership qualifications and operational prerequisites, including the provision of a satisfactory exclusive location and facility, meeting certain financial requirements, and the compliance with applicable requirements under state franchise laws concerning notice to and the opportunity to be heard by existing like-line dealers in the relevant market area where a dealer is to be established." (Emphasis added).

[4] Indeed, Plaintiff's Compliant at paragraph 38 provides that: "The clear intent of the Act was to restore previously rejected dealers to the same position as they were prior to Old Chrysler's bankruptcy filing and not to provide Chrysler with the opportunity to impose new, restrictive and burdensome terms and conditions upon reinstated dealers such as the Plaintiffs." In the same vein, Chrysler's own Counterclaim expressly provides that "The Act does not provide for a remedy other than the provision of "a customary and usual letter of intent to enter into a sales and service agreement," including without limitation, the unconditional reinstatement of a "covered dealership," like Counterclaim Defendants, to Chrysler Group's dealer network" Chrysler Counterclaim at paragraph 5(2).

Respectfully submitted,

BELLAVIA GENTILE & ASSOCIATES, LLP

By: _____
STEVEN BLATT (SHB 6792)

CC: George Mykulak, Esq. (Via email)