Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EAGLE AUTO MALL CORP., TERRY CHRYSLER          CIVIL ACTION NO.
JEEP, INC., JHS BUSINESS ASSOCIATES INC. D/B/A  2:10-CV-03876
CROSSROADS SUPERSTORE, and WESTMINSTER          (LDW)(ETB)
DODGE, INC.

                           Plaintiffs,

      **-against**

CHRYSLER GROUP, LLC,

                           Defendant.
-----------------------------------------------------------------X

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CHRYSLER GROUP, LLC

Plaintiffs Eagle Auto Mall Corp. ("Eagle"), Terry Chrysler Jeep, Inc. ("Terry"), JHS Business Associates Inc. d/b/a Crossroads Superstore ("Crossroads Superstore")and Westminster Dodge, Inc. ("Westminster") (collectively, the "Plaintiffs"), pursuant to Fed. R. Civ. P. 26, 34 and 37, requests defendant Chrysler Group, LLC ("Chrysler" or "Defendant") to produce and permit Plaintiffs, its attorneys and agents, to inspect and copy the documents listed below at the offices of Bellavia Gentile & Associates, LLP, 200 Old Country Road, Suite 400, Mineola, New York, 11501, or at such other place as the parties may agree, and serve a written response, within 30 days of service of this request.

### DEFINITIONS

1. "Document" shall mean any document or other material, in the broadest sense permissible under applicable laws and rules of court, and shall include, without limitation, any written (whether by hand or otherwise), typed, printed, photographed, recorded, graphic or other

matter, whether produced, reproduced, compiled, or stored on paper, cards, tapes, disks, film, computer storage devices or other media, of any kind or nature whatsoever -- including, but not limited to, accounts, account statements, accounting records, advertisements, agendas, agreements, annual reports, applications, appointment calendars, bills, books, bookkeeping entries, budgets, bulletins, cartridges, cassettes, charts, checks (front and back), check stubs, circulars, communications (of any tangible kind or nature whatsoever), computer chips, computer printouts, contracts, correspondence, data compilations, diaries, directives, disks, diskettes, documents of title, drawings, electric or electronic recordings, electronic mail, files, financial statements, graphs, interviews, invoices, ledgers, letters, logs, management letters, memoranda, messages, microfiche, microfilm, minutes, minute books, newspapers and other periodicals (and/or written accounts appearing therein), notations, notes, notebooks, opinions, orders, pamphlets, papers, photographs, posters, press releases, printouts, proxy statements, receipts, records, reports, statements, statements of account, statistics, studies, tapes, telecopies ("faxes"), telegrams, telephone logs, telephone messages, teletype, telexes, timesheets, transcripts, translations, transliterations, travel vouchers, trip reports, videotape, vouchers, working papers, workpapers, worksheets and writings -- and also includes, but is not limited to, originals, copies (with or without notes or changes thereon), alterations, amendments, compilations, modifications, digests, drafts, final versions, summaries, and transcripts, whether or not presently in the possession, custody or control of Defendant or Plaintiffs, which are either known to exist or may be located or discovered by the exercise of reasonably diligent efforts.

    2. "Concerning" shall mean and include referring to, relating to, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, responding to, supporting,

contradicting, constituting (in whole or in part), and/or being a draft, copy or summary of (in whole or in part).

3. Wherever the word "and" appears herein, it shall be read and applied so as to include the word "or", and wherever the word "or" appears herein, it shall be read and applied so as to include the word "and".

4. Wherever the word "any" appears herein, it shall be read and applied so as to include the word "all", and wherever the word "all" appears herein, it shall be read and applied so as to include the word "any".

5. The singular form of any word appearing herein shall embrace, and be read and applied as embracing, the plural, and the plural form of any word appearing herein shall embrace, and be read and applied as embracing, the singular, except as otherwise expressly stated herein.

6. The terms "plaintiff" and "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person not a party to the action.

7. "Person" shall mean, without limitation, any natural person, proprietorship, corporation, partnership, trust, joint venture, association, organization, business entity or governmental agency.

8. "Old Chrysler" shall mean the predecessor corporation to Chrysler that filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code on or about April 30, 2009.

## INSTRUCTIONS

A.  If you are able to produce only some of the documents called for in a particular request, you are requested to produce all of the documents that you are able to identify and to state the reasons for your inability to produce the remainder.

B.  With respect to any document for which you claim a privilege, identify the document, state the privilege involved, and state the factual and legal basis for the claimed privilege. Identify the document by stating (a) the type of document or a brief description of the document and contents of the matter claimed to be privileged (for example letter, memo, and so forth) (b) the name, occupation, and capacity of the individual from whom the privileged matter emanated (c) the identity of the author, (c) the date written or originated (d) the identity of the person to whom the original or copy was addressed or delivered and (e) the identity of every other person who has ever had possession of the document and (f) the privilege claimed.

C.  To the extent required by the Federal Rules of Civil Procedure, please promptly supplement your production if responsive materials become available after your initial production.

D.  If any document responsive to any demand herein was, but no longer is, in either of the defendant's possession or subject to its control, state (1) the type of documents, (2) the date of the document, (3) the author and addressee of the document and, their relationship, and state whether the document is (a) missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily to others; (d) otherwise disposed of; and in each such instance explain the circumstances surrounding any authorization for such disposition.

E. Set forth the Bates Stamp numbers of the documents that are responsive to each document demand herein, or, if not Bates Stamped, otherwise segregate documents responsive to each request and note with respect to each group of documents the demand to which it is responsive.

## DOCUMENTS REQUESTED

1. All Letters of Intent to enter into a Sales and Service Agreement that Chrysler issued to any of its current new motor vehicle dealers.

2. All Letters of Intent to enter into a Sales and Service Agreement that Chrysler issued to any dealer applicant or candidate that did not become a Chrysler new motor vehicle dealer.

3. All Letters of Intent to enter into a Sales and Service Agreement that Old Chrysler issued to any new motor vehicle dealer assumed by Chrysler in Old Chrysler's bankruptcy proceeding.

4. All Letters of Intent to enter into a Sales and Service Agreement that Chrysler issued to any former dealer of Old Chrysler that had filed for arbitration against Chrysler pursuant Section 747 of the Consolidated Appropriations Act of 2010 (the "Act")

5. All Letters of Intent to enter into a Sales and Service Agreement that Chrysler issued to any former dealer of Old Chrysler that had prevailed in its arbitration against Chrysler pursuant to the Act.

6. All written agreements between Chrysler and any former dealer of Old Chrysler that prevailed in its arbitration with Chrysler pursuant to the Act that concerns such dealer's

appointment to the Chrysler dealer network, including any settlement or confidentiality agreements.

7. All Letters of Intent to enter into a Sales and Service Agreement that Old Chrysler issued to any dealer or dealer applicant or candidate from January 1, 2007 through April 30, 2009.

8. All internal Chrysler documents, including, but not limited to, communications, memoranda, notes, emails, and correspondence, that concern the Act and/or the provisions of the Act that relate to Chrysler's statutory obligation to issue "a customary and usual letter of intent to enter into a sales and service agreement" to dealers that were successful in their arbitrations with Chrysler pursuant to the Act.

9. All communications between Chrysler and General Motors that concern the Act and/or the provisions of the Act that relate to either Chrysler's or General Motors' statutory obligation to issue "a customary and usual letter of intent to enter into a sales and service agreement" to dealers that were successful in their arbitrations with Chrysler pursuant to the Act.

10. Documents identifying or listing the names and addresses of Chrysler's current new motor vehicle dealers.

11. Documents identifying the department(s) and/or persons responsible in any way for drafting any of Chrysler's letters to enter into a Sales and Service Agreement provided to the dealers that were successful in their arbitrations with Chrysler pursuant to the Act.

12. Documents concerning any and all interim facility agreements or contracts, including, but not limited to, draft agreements and amended agreements, concerning the renovation or

construction of dealership facilities, between Chrysler and any of Chrysler's current new motor vehicle dealers.

13. Documents concerning any and all interim facility agreements or contracts, including, but not limited to, draft agreements and amended agreements, concerning the renovation or construction of dealership facilities between Chrysler and any dealer applicant or candidate.

14. Documents concerning any and all agreements or contracts, including, but not limited to, draft agreements and amended agreements, between Chrysler and any current Chrysler new motor vehicle dealer, concerning a Chrysler' dealer's obligation or duty to waive certain rights that may be provided it under an applicable state motor vehicle franchise statute such as protest rights that it may possess in the event that a new dealer is added in such dealer's market area.

15. Documents concerning any and all agreements or contracts, including, but not limited to, draft agreements and amended agreements, between Chrysler and any dealer applicant or candidate, concerning a Chrysler' dealer's obligation or duty to waive certain rights that may be provided it under an applicable state motor vehicle franchise statute such as protest rights that it may possess in the event that a new dealer is added in such dealer's market area.

16. Documents concerning any and all agreements or contracts, including, but not limited to, draft agreements and amended agreements, between Chrysler and any current Chrysler new motor vehicle dealer, concerning a Chrysler' dealer's obligation or duty to provide Chrysler with an option to lease or purchase such dealer's dealership facility.

17. Documents concerning any and all agreements or contracts, including, but not limited to, draft agreements and amended agreements, between Chrysler and any dealer applicant or candidate, concerning a Chrysler' dealer's obligation or duty to provide Chrysler with an option to lease or purchase such dealer's dealership facility.

18. Documents concerning Eagle created or dated subsequent to Eagle's dealer reinstatement arbitration pursuant to the Act.

19. Documents concerning Terry created or dated subsequent to Terry's dealer reinstatement arbitration pursuant to the Act.

20. Documents concerning Westminster created or dated subsequent to Westminster's dealer reinstatement arbitration pursuant to the Act.

21. Documents concerning Crossroads Superstore created or dated subsequent to Crossroads Superstore's dealer reinstatement arbitration pursuant to the Act.

22. Documents concerning Chrysler's allegation that it has complied with the Act by providing Plaintiffs' with a customary and usual letter of intent to enter into a sales and services agreement as alleged in the Fourth Affirmative Defense of Chrysler's Answer and paragraph 2 of Chrysler's Counterclaim.

23. Documents concerning Chrysler's allegation that the "Letter of Intent provided to each Counterclaim Defendant contains customary and usual conditions relating to dealership qualifications and operational prerequisites," as alleged in paragraph 3 of Chrysler's Counterclaim.

24. Documents concerning Chrysler's allegation that "Chrysler tendered its customary and usual Letters of Intent to all of the Counterclaim Defendant as required by the Act," as alleged in paragraph 35 of Chrysler's Counterclaim.

25. Documents, created after June 9, 2009, concerning any communications between Chrysler and any congressional member or staffer that concern the letter of intent, the Act, or any proposed legislation to restore dealer rights or reinstate dealers, regardless of whether such communication was initiated by Chrysler or by such other person.

26. All internal Chrysler documents, created after June 9, 2009, including, but not limited to, communications, memoranda, notes, emails, and correspondence, that concern the Act, or any proposed legislation to restore dealer rights or reinstate dealers.

27. Documents, created after June 9, 2009, maintained with any Chrysler legislative affairs department that concern the letter of intent, the Act, or any proposed legislation to restore dealer rights or reinstate dealers.

28. Documents, created after June 9, 2009, concerning any communications between Chrysler and Congressmen Steven C. Latourette, or any of his congressional members or staffers, that concern the letter of intent, the Act, or any proposed legislation to restore dealer rights or reinstate dealers, regardless of whether such communication was initiated by Chrysler or by such other person.

Dated: Mineola, New York
       January 14, 2011

                              Steven Blatt (SHB-6792)
                              BELLAVIA GENTILE & ASSOCIATES
                              *Attorneys for Plaintiffs*
                              200 Old Country Road, Suite 400
                              Mineola, New York 11501
                              (516) 873-3000

To: George Mykulak, Esq. (Via Email)
     WilmerHale
     60 State Street
     Boston, MA 02109 USA