Exhibit C

**BELLAVIA GENTILE**
**&**
**ASSOCIATES, LLP**
ATTORNEYS AT LAW

200 OLD COUNTRY ROAD • SUITE 400
MINEOLA, NEW YORK 11501
www.DealerLaw.com

TELEPHONE 516-873-3000
FACSIMILE 516-873-9032

LEONARD A. BELLAVIA
JOHN G. GENTILE
STEVEN H. BLATT
WARREN S. DANK△○
WILLIAM R. BRUNNER†
MICHAEL S. CIACCIO
MATTHEW DAVID BROZIK△
BARRY M. WEISS

Counsel
KENNETH F. McCALLION
THOMAS A. HOLMAN
KEVIN MALDONADO
MARK W. GAFFNEY
JANE K. CRISTAL
PETER D. BARON
GAIL M. BLASIE

△ Also admitted in New Jersey
○ Also admitted in Connecticut
† Admitted only in New Jersey

February 22, 2011

George Mykulak, Esq. (Via Email)
WilmerHale
60 State Street
Boston, MA 02109 USA

   Re: Eagle et. al. v. Chrysler Group LLC
     CV 2:10-CV-03876

Dear Mr. Mykulak:

  The purpose of this letter is to attempt to (a) resolve certain of the objections raised by defendant Chrysler Group LLC ("Chrysler" or "Defendant") to plaintiffs Eagle Auto Mall Corp. ("Eagle"), Terry Chrysler Jeep, Inc. ("Terry"), JHS Business Associates Inc. d/b/a Crossroads Superstore ("Crossroads Superstore") and Westminster Dodge, Inc. ("Westminster") (collectively, the "Plaintiffs") first document demand dated January 14, 2011 ("Plaintiffs' Document Demand") and to Plaintiffs' Rule 30(B)(6) Deposition Notice and (b) address Chrysler's proposed Stipulation and Protective Order.

Defendant's Responses and Objections to Plaintiffs'
Document Demand ("Defendant's Response")

  While Defendant has objected to each and every request contained in Plaintiffs' Document Demand, with respect to Document Requests #s 1 through 5, 7, 8, 10, 11, and 18 through 24, Defendant's Response provides that "it will produce relevant, non-privileged documents in its possession, custody or control that are responsive to this request." As such, this will confirm that (subject to the parties' agreeing on a form of confidentiality agreement) Defendant will be producing documents responsive to the above requests and I will solely address Document Requests #s 6, 9, 12 through 17 and 25 through 28. If my understanding is incorrect, please advise me as soon as possible.

  Defendant has objected to Document Requests #s 6, 9, 12 through 17 and 25 through 28 on the grounds that they purportedly, among other things, (a) not reasonably calculated to lead to the discovery of admissible evidence and (b) seeks information that

is neither relevant to the parties' claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence.[1] However, Plaintiffs' Document Demand is specifically tailored to elicit information and documentation concerning the parties' claims and defenses. Furthermore, F.R.C.P. 26(b)(1) provides, in pertinent part that

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim or defense--* including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of *any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.* (Emphasis added).

"The [above-quoted federal] rule has been liberally construed." *Lyondell-Citgo Refining, LP v. Petroleos De Venezuela*, S.A, 2004 WL 2698218 (S.D.N.Y. 2004). It is well-settled within the Second Circuit that the above-quoted federal rule will be satisfied if there is any possibility that the information sought may be relevant to the subject

---

[1] Chrysler also asserts the repeatedly objects to the production of any information protected from disclosure by any applicable privilege. Privilege, however, is narrowly construed. *See e.g., Well v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *In the Matter of International Horizons, Inc.*, 689 F.2d 996, 1002-03 (11th Cir. 1982). The burden of establishing that a privilege exists is on the party claiming the privilege. *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). A bald assertion of privilege is insufficient to claim the privilege. *Lyons v. Johnson*, 415 F.2d 540, 541-542 (9th Cir. 1969). Rather, a claim of privilege must be directed to specific questions or documents, and the party asserting the privilege must provide enough information so that the trial court may rule on the privilege claim. *North River Insurance Company v. Stefanou*, 831 F.2d 484, 486-87 (4th Cir. 1987). To properly invoke privilege when responding to discovery, the answering party must identify the document with sufficient specificity to allow the court to assess the claim of privilege, and specify the nature of the privilege being asserted. Fed. R. Civ. P. 26(b)(5). The party asserting a privilege, at a minimum, must briefly describe the information withheld and the nature of the privilege. *Id. See also* 7 J. Moore, *Moore's Federal Practice* § 33.62(1) (3d ed. 2010). A blanket assertion of privilege is insufficient. Rather, the applicable privilege must be separately claimed for each document or item of information withheld. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). Although the party asserting the privilege is not required to reveal purportedly privileged information in complying with the rules, enough information must be supplied so that the court can determine whether the asserted privilege is applicable. *See, Marx v. Kelly, hart & Hallman, P.C.* 929 F.2d 8, 12 (1st Cir. 1991); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 541 (10th Cir. 1984). Courts should require a party claiming privilege or work product protection for multiple documents or communications to maintain a privilege log listing each document separately and providing sufficient detail to permit the court to determine whether each document or communication is potentially protected from disclosure. *See, Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper of the U.S. Senate*, 471 F.3d 1341, 1343 (D.C. Cir. 2006). Chrysler has not met its obligations concerning its assertions of privilege. Chrysler's responses do not comply with the standards discussed above.

matter of the action. *Id., quoting Mallinckrodt Chem. Works v. Goldman Sachs & Co.*, 58 F.R.D.248, 353 9S.D.N.Y. 1973). Indeed, "in federal actions, discovery should be broad, and all relevant materials which are reasonable calculated to lead to the discovery of admissible evidence should be [discoverable]." *Id. See Morse/Diesel, Inc. v. Fidelity and Deposit Company of Maryland*, 122 F.R.D. 447 (S.D.N.Y. 1988) (New York District Court have interpreted "reasonably calculated to lead to the discovery of admissible evidence" as meaning "any possibility that the information sought may be relevant to the subject matter of the action.").

Based upon the above-well settled law, Defendant has improperly objected to the following requests.

Requests #s 12 through 17 – Plaintiffs have requested the production of documents concerning any and all agreements or contracts, including, but not limited to, draft agreements and amended agreements between either Chrysler, on the one hand, and either any of Chrysler's current new motor vehicle dealers or any dealer applicant or candidate, on the other hand, concerning (a) the renovation or construction of dealership facilities (Requests # 12 and 13), (b) a Chrysler' dealer's obligation or duty to waive certain rights that may be provided it under an applicable state motor vehicle franchise statute such as protest rights that it may possess in the event that a new dealer is added in such dealer's market area (Requests # 14 and 15), and (c) a Chrysler' dealer's obligation or duty to provide Chrysler with an option to lease or purchase such dealer's dealership facility (Requests # 16 and 17).

Despite Chrysler's objections to the contrary, the above requests seek to elicit information concerning the following express and specific allegations contained in Plaintiffs' Complaint:

Paragraph 45 of Plaintiff's Complaint – "While the Act does not define or set any parameters as to the meaning of "customary and usual letter of intent," Chrysler's Letter of Intent is neither customary or usual in each of the following ways: **the Plaintiffs must waive certain rights that may be provided it under applicable state motor vehicle franchise statute such as protest rights that it may possess in the event that a new dealer is added in the Plaintiffs' market area; Chrysler will not provide Plaintiffs with any new Chrysler motor vehicles for sale to the general public unless and until Plaintiffs complete a facility renovation in a manner that has been solely prescribed by Chrysler; Plaintiffs must provide Chrysler with an option to lease or purchase the Plaintiff's dealership facility; and Chrysler's proposed Letter of Intent indicates that, prior to entering into a sales and service agreement with any of the Plaintiffs, Chrysler would "give notice to the state and/or dealers as may be required by state law,"** even though the Act preempts state law on the issue of such a challenge and affords no third party with any putative right to challenge the reinstatement of a prevailing dealer. (Emphasis added).

Paragraph 54 of Plaintiff Complaint provides " Upon information and belief, the above-referenced provisions demanded by Chrysler to be included in its Letter of Intent have solely been required of dealers who sought and won the reinstatement of their dealerships through arbitration under the Act."

Furthermore, Paragraph 3 of Defendant's own Counterclaim provides that "The Letter of Intent provided to each Counterclaim Defendant ("LOI") contains customary and usual conditions relating to dealer qualifications and operational prerequisites, including without limitation, **the provision of a satisfactory exclusive location and facility,** meeting certain financial requirements, **and the compliance of Chrysler Group with state franchise laws requiring inter alia notice to and the opportunity to be heard by existing like-line dealers in the relevant market area where the additional dealer is to be established."** (Emphasis added).

Likewise, paragraph 36 of Chrysler's own Counterclaim provides that "The LOI contains customary and usual conditions relating to dealership qualifications and operational prerequisites, **including the provision of a satisfactory exclusive location and facility, meeting certain financial requirements, and the compliance with applicable requirements under state franchise laws concerning notice to and the opportunity to be heard by existing like-line dealers in the relevant market area where a dealer is to be established."** (Emphasis added).

Simply stated, Requests #s 12 through 17 are specifically tailored to elicit information and documentation concerning whether any of Chrysler's current new motor vehicle dealers or any dealer applicant or candidate were or are subject to similar conditions as those demanded by Chrysler to be satisfied by Plaintiffs as a condition to their reinstatement.

Requests #s 9, 25 through 28 – In essence, through these Requests, Plaintiffs have requested the production of (a) documents or communications between Chrysler and either General Motors or any congressional member or staffer that concern the letter of intent, the Act, or any proposed legislation to restore dealer rights or reinstate dealers (Requests # 9, 25 and 28) , and (b) all internal Chrysler documents, including documents maintained with any Chrysler legislative affairs department, that concern the Act, or any proposed legislation to restore dealer rights or reinstate dealer (Requests # 26 and 27).

As Chrysler is well aware, the within action concerns, among other things, (a) whether intent of the Act was to restore previously rejected dealers to the same position as they were prior to Old Chrysler's bankruptcy filing and (b) whether Chrysler has violated the Act by seeking to impose new, restrictive and burdensome terms and conditions upon reinstated dealers such as the Plaintiffs.

Indeed, Plaintiff's Compliant at paragraph 38 provides that: "The clear intent of the Act was to restore previously rejected dealers to the same position as they were prior to Old Chrysler's bankruptcy filing and not to provide Chrysler with the opportunity to impose new, restrictive and burdensome terms and conditions upon reinstated dealers such as the Plaintiffs." In the same vein, Chrysler's own Counterclaim expressly provides that "The Act does not provide for a remedy other than the provision of "a customary and usual letter of intent to enter into a sales and service agreement," including without limitation, the unconditional reinstatement of a "covered dealership," like Counterclaim Defendants, to Chrysler Group's dealer network" Chrysler Counterclaim at paragraph 5(2).

In this respect, Requests #s 25 through 28 are specifically tailored to elicit information and documentation in Chrysler's possession concerning the letter of intent, the Act, or any proposed legislation to restore dealer rights or reinstate dealers.

**Request # 6** - Plaintiffs have requested all agreements between Chrysler and any former dealer of Old Chrysler that prevailed in its arbitration with Chrysler pursuant to the Act that concerns such dealer's appointment or reinstatement to the Chrysler dealer network, including any settlement or confidentiality agreements. While Chrysler has objected on the ground that settlement agreements contain confidential information on other dealers and dealer candidates, as set forth below, we will agree to enter into a confidentiality agreement with Chrysler and believe that this will alleviate any concern of Chrysler relating to the production of any information that may contain information that is confidential or proprietary in nature.

In sum, because the information sought by Plaintiffs through the above-referenced Document Requests are relevant to the party's claims or defenses and, at a minimum, reasonably calculated to lead to the discovery of admissible evidence, the requested documentation should be produced by Defendant. Please contact me to discuss this discovery dispute in an effort to avoid either the involvement of the Court or unnecessary motion practice.

Confidentiality Agreement

We are in receipt of the Defendant's proposed confidentiality order. Chrysler's proposed agreement is onerous, unreasonably limits the Plaintiffs' use of documents in this litigation, would place undue burden upon the Plaintiffs, and seeks to impose upon Plaintiffs duties and obligations that are inconsistent with or in excess of obligations imposed by the Federal Rules of Civil Procedure, or any other applicable rule or statute. Indeed, a simple review of Chrysler's proposed confidentiality agreement demonstrates that it permits Chrysler the unfettered right to, literally, without basis or justification, mark every single document "Confidential," "Highly Confidential,", or "Attorney Eyes Only." Furthermore, Chrysler's proposed agreement unfairly places the burden on Plaintiffs to bear the cost, time and expense of fighting any Chrysler designation to which it finds objectionable or without basis. This procedure, however, turns well settled law on its ear.

Specifically, "it is a fundamental principle of law that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . that is admissible, or 'reasonably calculated to lead to the discovery of admissible evidence." *Rule 26(b)(1), Federal Rules of Civil Procedure.* As such, there is no absolute privilege for trade secrets and similar confidential information; however, Federal Rule of Civil Procedure 26(c)(7) provides that district court. "for good cause shown," may order that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." *Rule 26(c)(7), Federal Rules of Civil Procedure.* "To demonstrate good cause under this provision, **the party seeking the protective order** must show that the information

sought is a trade secret or other confidential information, and that the harm caused by its disclosure outweighs the need of the party seeking the disclosure." *Chembio Diagnostic Systems, Inc. v. Saliva Diagnostic Systems, Inc.*, 236 F.R.D. 129 (E.D.N.Y. 2006). *See also Nycomed US Inc. Glenmark Generics Inc.*, 2010 WL 889799 (E.D.N.Y. 2010).

Stated otherwise, in order to secure a protective order, the party resisting disclosure must demonstrate that the information sought is confidential and that good cause exists for issuance of a protective order. As such, the party resisting disclosure must show that disclosure of the confidential information will result in a clearly defined and very serious injury to its business. *Gelb v. American Tel. & Tel. Co.*, 813 F. Supp. 1022, at 1934 (S.D.N.Y. 1993); *Four Star Capital Corporation v. NYNEX Corporation*, 183 F.R.D. 91, at 110 (S.D.N.Y. 1997). It is the party seeking an order of confidentiality who bears the burden of demonstrating the required good cause supporting the issuance of such an order. *Reliance Insurance Company v. Barron's*, 428 F.Supp. 200, at 202 (S.D.N.Y. 1977). Only "[o]nce these factors are established, the burden shifts to the party requesting discovery to demonstrate that the 'information is sufficiently relevant and necessary to the case to outweigh the harm disclosure would cause to the person from whom he is seeking the information.'" *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91 (S.D.N.Y. 1997).

Here, based upon well settled law, even if, as a matter of courtesy, Plaintiffs were to enter into a confidentiality agreement, **the burden in the first instance should be upon Chrysler to demonstrate that a particular document should be protected**. A showing of good cause requires a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. *Four Star Capital Corporation v. NYNEX Corporation*, 183 F.R.D. 91, at 110 (S.D.N.Y. 1997). Stated otherwise, the burden should not be upon Plaintiffs to surmise why Chrysler believes a document should be protected. Chrysler's basis for labeling a document confidential should first be laid out.

It should be noted that, in Defendant's Reponses (to Plaintiffs' Document Demand), **Chrysler has made no specific showing at all that would warrant the protection of any particular document**. While Defendant's Response contains numerous objections on the basis that the documents requested contain confidential information, "an assertion of confidential business information, without more, will not merit trade secret protections." *Nycomed US Inc. Glenmark Generics Inc.*, 2010 WL 889799 (E.D.N.Y. 2010). *See also Prescient Acquisition Group v. MJ Publ'g Trust*, 487 F.Supp.2d 364, 375 (S.D.N.Y. 2007) (court sua sonte required any party seeking to maintain court filings under seal to identify with particularity (i.e., page and line) the precise information which the party maintain should be kept under seal and demonstrate the particular need for sealing the information). Again, in response to Plaintiffs' Document Demand **Chrysler has failed and refused to identify even a single document that it believes should be deemed confidential**.

Furthermore, Chrysler, who should bear the burden of demonstrating exactly what documents it wishes to deem confidential, seeks to shift that burden as its proposed confidentiality agreement (a) permits it the unfettered right to designate any document, without any showing, as confidential and (b) then requires the Plaintiffs, who may object

to Chrysler's designations, to first notify Chrysler of the objection to the designation and then, if the dispute cannot be resolved, seek relief from the Court to rule upon the designation.

In sum, Chrysler's proposed agreement would create a tortured approach to document production and will result in unnecessary delay, inefficiency, a waste of resources, and will make completion discovery in a reasonable period of time a virtual impossibility.

While Plaintiffs do not believe that a confidentiality agreement is warranted in this action, or that entering into a confidentiality agreement should be a condition imposed upon Plaintiffs in order for Chrysler to produce documents responsive to Plaintiffs' Document Demand, in the interest of compromise, Plaintiffs have attached a proposed confidentiality agreement that both protects Chrysler and is practical. Importantly, Plaintiffs' proposed agreement clearly tracks well settled law (i.e., it places the burden upon the party seeking to designate a document as confidential to show that the information sought is a trade secret or other confidential information and, in the event that a party objects to another party's a designation, and the parties cannot resolve their dispute, the party seeking to designate a document as confidential may seek relief from the Court, including an order that the documents or other information should be so designated. Furthermore, the documents or other information in dispute shall not be treated as designated by the producing party pending resolution by the Court).

In order to hopefully expedite the exchange, inspection and/or production of documents, I urge you to review, with an open mind, the enclosed "streamlined" proposed confidentiality agreement. Please provide me with your comments, if any, thereto.

Chyrsler's Designation of Witness and Objection to
Plaintiff's Rule 30(B)(6)n deposition Notice

While Chrysler has designated John Tangeman to testify on its behalf in response to Plaintiffs' Rule 30(B)(6) Deposition Notice, it has advised Plaintiffs that it would not produce Mr. Tangeman until April and only at a location that must be at or near Chrysler's headquarters in Auburn Hills, Michigan. First, delaying the deposition of Mr. Tangeman until April will prejudice Plaintiffs and unnecessarily delay the prosecution of this action. As Chrysler is well aware, Plaintiffs are seeking to expedite the prosecution of this action as they are, financially, worse off every single day that their reinstatement is frustrated.

Second, cost, convenience and litigation efficiency all call for Mr. Tangeman's deposition to take place in New York. Chrysler is a global corporation with the resources to bear the cost of flying Mr. Tangeman to New York for a deposition. It cannot be disputed that Chrysler is a multi national corporation that regularly flies its employees all over the world as its business dictates. In contrast, Michigan is only convenient for Mr. Tangeman. Plaintiffs, each a local automobile dealership, do not have the same resources as Chrysler and compelling Plaintiffs to depose Mr. Tangeman in Michigan would cause them a severe hardship. Deposing Mr. Tangeman in Michigan would essentially preclude

any of the Plaintiffs from attending the deposition. It is also disingenuous for Chrysler to contend that its witnesses will be inconvenienced by having to travel to New York for a deposition when it unilaterally determined in 2009 to conduct one of the largest bankruptcy proceedings in United States history in the Southern District of New York. It should also be noted that Chrysler counsel is located in New York (i.e., Mr. McDonald, whose office is located at 399 Park Avenue, New York, New York) and Boston (significantly closer to New York than Michigan).

Finally, you have advised us that Chrysler will oppose the deposition of Peter Grady. We agree, without prejudice to file a motion to compel his appearance at a deposition, to defer this issue until the completion of Mr. Tangeman's deposition.

Very truly yours,

BELLAVIA GENTILE & ASSOCIATES, LLP

BY: _____
Steven Blatt, Esq.

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------X<br>EAGLE AUTO MALL CORP., TERRY CHRYSLER JEEP, INC., JHS BUSINESS ASSOCIATES INC. D/B/A CROSSROADS SUPERSTORE, and WESTMINSTER DODGE, INC.<br><br>       Plaintiffs,<br><br>       v.<br><br>CHRYSLER GROUP, LLC,<br><br>       Defendant.<br>------------------------------------------------------------------X | CIVIL ACTION NO.<br>2:10-CV-03876 (LDW)(ETB) |

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement is entered into between Plaintiffs Eagle Auto Mall Corp. ("Eagle"), Terry Chrysler Jeep, Inc. ("Terry"), JHS Business Associates Inc. d/b/a Crossroads Superstore ("Crossroads Superstore")and Westminster Dodge, Inc. ("Westminster") (collectively, the "Plaintiffs") by and through its attorneys Bellavia Gentile & Associates, LLP and defendant Chrysler Group, LLC ("Chrysler" or "Defendant") by and through its attorneys WilmerHale. The parties agree to confidentiality as follows:

All pretrial discovery and settlement negotiations between the parties shall proceed under the terms of this Agreement.

All information, documents, or testimony produced during pretrial discovery and settlement negotiations shall be provided solely for the purpose of this litigation, and may not be used or disclosed for any other purpose, subject to the provisions of this Agreement. Unless the provisions of this Agreement are expressly waived by the producing party, all information, documents, and testimony produced in this litigation or during settlement negotiations shall be considered confidential and shall be treated by the parties as "Confidential Material."

Either party who produces documents, computer records or other information that contains confidential technical or business information or information of a proprietary nature, **may, upon demonstrating good cause and showing that the information produced is a trade secret or other confidential information**, (a) produce such information with a stamp on the cover page of the document that it is "Confidential" or (b) identify the document as "Confidential" in a letter. Such letter shall be deemed the equivalent of a confidentiality stamp for the purpose of this agreement.

In the event any such documents are produced that are stamped or identified as confidential, the other party shall maintain the documents and the information contained in them as confidential throughout the course of this litigation. "Confidential Material", including all information, documents and testimony produced in the course of pretrial discovery or settlement negotiations, along with any summaries, abstracts, indices, or other descriptions of such confidential material, shall be held in confidence by the parties to this action and maybe disclosed only to the following individuals or entities (collectively referred to as "eligible recipients"): (a) the parties and counsel to the parties in this action and the paralegal, clerical and secretarial staff employed by such counsel;

(b) the court and its personnel (any confidential materials used in filing with the court shall comply with the provisions of paragraph 3 hereof); (c) experts and consultants retained for purposes of this litigation; and (d) court reporters and stenographers.

"Confidential Material" shall be used by eligible recipients only for the purpose of preparing for, conducting or settling this action.

Any document stamped or identified as Confidential may be offered into evidence at trial. However, it shall be placed under seal and shall not be made part of the public record. Any document identified as Confidential may be submitted into evidence in support of a motion. However, it shall be placed under seal and shall not be made part of the public record. Nothing contained herein shall prevent the use of information or documents designated as confidential at a deposition, except that if any information or documents designated as confidential are used at a deposition, the portion of the deposition transcript that discusses the confidential information and any exhibits that are marked "Confidential" shall themselves be treated as confidential pursuant to the terms of this Confidentiality Order. In the event that confidential information or documents or deposition portions are used in a court proceeding, all parties agree to take steps, including making the necessary requests to the Court, to ensure that the materials will not lose their confidential status.

In the event that a party objects to another party's a designation, and the parties cannot resolve their dispute, the party seeking to designate a document as confidential may seek relief from the Court, including an order that the documents or other information should be so designated. Furthermore, the documents or other information in dispute shall not be treated as designated by the producing party pending resolution by

the Court). Any dispute that arises between the parties with respect to the confidentiality of any information or documents shall be resolved by the Court.

No producing party who has identified its own documents as "Confidential" shall be bound by this Confidentiality Agreement as it pertains to its own produced documents. All pretrial motions and other pretrial filings containing "Confidential Material" shall be made under seal and shall not be made part of the public record.

Nothing herein shall be construed as a concession by any party of the relevance, admissibility or lack thereof, of any information or documents. Further, this Agreement shall not require a party to produce information or documents that it contends are privileged, otherwise non-discoverable, or would not be required to be produced in the absence of this Agreement.

This Agreement may be signed in counterparts, and facsimile signatures shall be acceptable as original.

Dated:   Mineola, New York
         February __, 2011

                                                            WilmerHale

Bellavia Gentile & Associates, LLP

                                          By: _____
By: _____             George Mykulak, Esq.
Steven Blatt, Esq. (SB6792)                    Attorneys for Defendant
Attorneys for Plaintiffs                       Chrysler Group, LLC
 200 Old Country Road – Suite 400              60 State Street
Mineola, New York 11501                        Boston, MA 02109 USA
(516) 873-3000                                 (617) 526 6023

Exhibit D

## Debbie Lippert

**From:** Steve Blatt [sblatt@dealerlaw.com]
**Sent:** Tuesday, March 01, 2011 2:40 PM
**To:** Debbie Lipperthauser email
**Subject:** Fw: Eagle et al.

Sent via BlackBerry by AT&T

---

**From:** "Mykulak, George" <George.Mykulak@wilmerhale.com>
**Date:** Tue, 1 Mar 2011 14:36:04 -0500
**To:** sblatt<sblatt@dealerlaw.com>
**Subject:** Eagle et al.

**Steve - I'm fighting a losing battle with a cold and don't have much of a voice. To make efficient use of our call, below is a brief summary of my client's positions on the open discovery issues. Obviously, this is without waiver of objections and in the interest of a compromised resolution.**

**Protective Order** - CG will not agree to your proposed protective order which does not provide CG with the necessary protections under the circumstances and is unwieldy and will cause delays in production. CG will agree to the protective order entered in Quality (with the addition of a provision on inadvertent production of privileged documents) or negotiate the language of our 2 tier proposal. We are preparing to commence a rolling production once we can resolve this.

**John Tangeman's Deposition** - CG will agree to produce John Tangeman at WilmerHale/Boston for an early April deposition on a mutually convenient date (contingent on the entry of the protective order and completion of document production).

**Document Objections** - CG does not believe any of the documents requested below are relevant, but will agree to the following:

    **Settlement Agreements** - CG will agree to produce settlement agreements/LOIs with prevailing dealers who have been added to the dealer network (contingent on the entry of a protective order that allows for Attorney Eyes Only protection and the resolution of any objection/intervention by a settling dealer).

    **Agreements** - Since the statutory remedy is a customary and usual LOI, the only agreements that CG will agree to produce are signed open point LOIs, whether resulting from the arbitrations, by settlement (subject to the conditions above) or in the ordinary course of CG's business. CG will not produce sales and service agreements containing terms.

    **Communications with GM and Congress regarding the Act and other legislation/internal CG legislative group documents regarding the Act and other legislation -**

        **GM** - CG will agree to produce relevant communications between CG and GM limited to documents created after enactment of the Act and relating to the LOI remedy and/or obligations to prevailing dealers under the Act (contingent on the entry of the protective order and completion of ediscovery).

3/1/2011

**Congressional/legislative documents** - CG will agree to produce relevant communications between CG and Congress and relevant, non-privileged internal CG documents in the legislative group limited in each case to documents created after enactment of the Act and relating to the LOI remedy and/or obligations to prevailing dealers under the Act (contingent on the entry of the protective order and completion of ediscovery).

**I'm available this afternoon to talk to you (or at least listen) about this. So, give me a call when it's convenient.**
**George**

**George W. Mykulak | WilmerHale**
60 State Street
Boston, MA 02109 USA
+1 617 526 6023 (t)
+1 617 526 5000 (f)
george.mykulak@wilmerhale.com

Please consider the environment before printing this email.

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

3/1/2011