STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EAGLE AUTO MALL CORP., TERRY CHRYSLER             CIVIL ACTION NO.
JEEP, INC., JHS BUSINESS ASSOCIATES INC. D/B/A    2:10-CV-03876
CROSSROADS SUPERSTORE, and WESTMINSTER            (LDW)(ETB)
DODGE, INC.

                                  Plaintiffs,

     **-against**

CHRYSLER GROUP, LLC,

                                  Defendant.
------------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF TERRY CHRYSLER JEEP, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

BELLAVIA GENTILE & ASSOCIATES, LLP
Steven Blatt, Esq.
200 Old Country Road
Mineola, New York 11501
516-873-3000

# **TABLE OF CONTENTS**

TABLE OF AUTHORITES …………………………………………………………….....

PRELIMINARY STATEMENT………………………………………………….................1

Chrysler Has Misconstrued or Misstated Plaintiff's Application…………..……………..1

Terry's Request for a TRO………………………………………………………………….2

  I. TERRY CHRYSLER JEEP PLAINTIFF WILL SUFFER IRREPARABLE HARM IF CHRYSLER IS NOT ENJOINED FROM AWARDING MR. ZAPPONE THE PROPOSED DEALERSHIP………3

  II. PLAINTIFF HAS ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS……………………………………………………………..4

    A. The Clear Intent Of The Legislation Was To Restore, Reinstate And Continue Previously Rejected Dealers To The Same Position As They Were Prior To Both Chrysler's And General Motors' Bankruptcy Filings………………………………………………………………………4

    B. The Arbitrator In The Parties Arbitration, Conducted Pursuant To The Act, Directed That Plaintiff's "Covered Dealership [Be] Renewed" – Even Assuming The Award Was In Error, Chrysler Is Bound By It And The Court's Role Is Limited To Enforcing It (Plaintiff's First Claim for Relief)…………………………………………………….8

    C. Plaintiff Is Entitled to Confirmation of the Arbitration Award………...9

  III. A BALANCE OF THE HARDSHIPS WEIGHS IN FAVOR OF THE INJUNCTION…………………………………………………………………10

CONCLUSION ……………………………………………………………………10

# TABLE OF AUTHORITIES

**CASES:**

Alan Skop, Inc. v. Benjamin Moore, Inc.,
909 F.2d 59 (2d Cir. 1990)..................................................................10

Bowen v. Amoco Pipeline Co.,
254 F.3d 925, 932 (10th Cir. 2001)..........................................................8

Hackwell v. U.S.,
491 F.3d 1229, 1237 (10th Cir. 2007).......................................................6

Hanes v. Mid-America Petroleum,
577 F. Supp. 637, 648 (W.D. Mo. 1983)....................................................5

I/S Stavborg v. Nat'l Metal Converters, Inc.
500 F.2d 424, 427 (2d Cir. 1974..........................................................10

In re Motors Liquidation Co.,
No. M-47, 2010 WL 44449425, at *5 (S.D.N.Y. Oct. 29, 2010)........................8

Innoviant Pharmacy, Inc. v. Morganstern,
390 F.Supp.2d 179 (N.D.N.Y. 2006)....................................................2, 3

Janmort Leasing, Inc. v. Econo-Car International, Inc.,
475 F.Supp. 1282, 1294 (E.D.N.Y. 1979)...............................................4, 5

LaBelle Chevrolet, LLC v. General Motors, LLC,
705 F. Supp. 2d 97, 100 (D. Mass. 2010)..................................................5

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
454 F.3d 108 (2nd Cir. 2006)............................................................2, 3

Los Feliz Ford, Inc. v. Chrysler Group, LLC,
CV 10-06077, at 5 (C.D. Cal. Oct. 27, 2010).............................................5

Marine Transit Corp. v. Dreyfus,
284 U.S. 263, 276 (1932)....................................................................9

Merriam-Webster Online Dictionary,
http://www.merriam-webster.com/dictionary/renew - last visited March 23, 2011)........9

Ormsbee Dev. Co. v. Grace,
668 F.2d 1140, 1147 (10th Cir. 1982).......................................................8

Pennsylvania Eng'g Corp. v. Islip Res. Recovery,
710 F. Supp. 456, 460 (E.D.N.Y. 1989)..................................................................9

Quality Jeep Chrysler Inc. v. Chrysler Group, LLC,
No. 10-900 (D.N.M. March 22, 2011).....................................................................7

Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.,
749 F.2d 124 (2d Cir. 1984)....................................................................................4

Ruby-Collins, Inc. v. City of Huntsville,
748 F.2d 573, 576 (11th Cir. 1984)...................................................................... 10

Semmes Motors, Inc. v. Ford Motor Company,
429 F. 2d 1197, 1205 (2d Cir. 1970).......................................................................4

Tysinger Motor Co. v. Chrysler Group, LLC,
No. 3:10 CV554, 2011 WL 63866, at *3 (E.D. Va. Jan. 7, 2011)..............................8

United Paperworks Int'l Union v. Misco, Inc.,
484 U.S. 29 (1987)..................................................................................................9

# PRELIMINARY STATEMENT

This reply memorandum of law is respectfully submitted on behalf of plaintiff Terry Chrysler Jeep, Inc. ("Terry Chrysler Jeep" or "Plaintiff") in further support of its motion, by order to show cause, pursuant to the Federal Rules of Civil Procedure ("FRCP") § 65, for a temporary restraining order, enjoining defendant Chrysler Group, LLC ("Chrysler"), until final judgment has been rendered in this action, from awarding or issuing a Dealer Sales and Services Agreement with respect to any Chrysler and Jeep dealership in the Mechanicville sales area ("Terry's Request for a TRO").

<u>Chrysler Has Misconstrued or Misstated Plaintiff's Application</u>

A review of Chrysler's opposition to Plaintiff's Request for a TRO reveals that Defendant has, either unintentionally misconstrued, or intentionally misstated, Plaintiff's application. Chrysler is attempting to obfuscate the real issues before the Court and frame Plaintiff's motion in a manner that is indefensible. The essence of Chrysler's Memorandum of Law submitted in opposition to the requested temporary restraining order is that neither Section 747 of the Consolidated Appropriations Act of 2010 (Public Law 111-117) (*i.e.*, the Act) nor the New York State Motor Franchised Motor Vehicle Dealer Act (the "NYFMVDA") provides Plaintiff with the authority or "right of action" to enjoin Chrysler, until final judgment has been rendered in this action, from awarding or issuing a Dealer Sales and Services Agreement to Mr. Zappone in the Mechanicville sales area. Specifically, Chrysler argues that (a) the Act provides to Plaintiff no right to protest the opening of any other dealer, (b) Plaintiff is not a dealer and does not possess any standing under the NYFMVDA to protest the award of another dealer's franchise, and (c) even if Plaintiff has standing under the NYFMVDA to protest the opening a dealership by Mr. Zappone in the Mechanicville sales area, the relevant New York state statute forecloses any such protest because Mr. Zappone's proposed dealership is more than six (6) miles from the location of Terry Chrysler Jeep. It is ironic that Chrysler, by acting in violation of the Act (by failing to reinstate Plaintiff by refusing to provide it with a customary and usual Letter of Intent) and thereby preventing Plaintiff from becoming a dealer, should now advance the argument that because Plaintiff it should not be entitled to the protection of dealer statutes. In any event, even if Plaintiff were to rely upon the NYFMVDA as a basis for the requested temporary restraining order, which it is not, Chrysler's application of that state statute is

1

erroneous. The fact that Mr. Zappone's proposed dealership may be located more than six miles from Plaintiff, at most, creates a rebut able presumption that Plaintiff could not oppose the opening of Mr. Zappone's dealership. Of course Defendant fails to even acknowledge the evidence that Plaintiff has already submitted to the Court that would, in fact, rebut this presumption – i.e., that Chrysler itself acknowledged at the parties' arbitration that the Mechanicville market could only sustain one dealership and two dealerships in such close proximity to each other in the Mechanicville sales area would cannibalize each other.

In sum, although Clifton Park has been closed for over a year and a half, Chrysler did not sign a Letter of Intent with Mr. Zappone with respect to the Mechanicville sales area until March 3, 2011, a mere few weeks after this Court directed that discovery in this action be concluded by July 2011. Given the facts that Clifton Park had closed and Terry Chrysler Jeep was awarded reinstatement in its arbitration with Chrysler, it is abundantly clear that Chrysler is yet again seeking to defeat the reinstatement of Terry Chrysler Jeep to the Chrysler dealer network, render Plaintiff's dealer reinstatement arbitration award moot and discourage Plaintiff from proceeding with the within litigation by awarding a dealership in Terry Chrysler Jeep's own backyard (contrary to the business plan set forth by Chrysler in our federally mandated arbitration). Such transparent gamesmanship should not be countenanced.

Terry's Request for a TRO

In this circuit, a party seeking a preliminary injunction must show irreparable harm and either: (1) a likelihood of success on the merits; or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2nd Cir. 2006*); Innoviant Pharmacy, Inc. v. Morganstern*, 390 F.Supp.2d 179 (N.D.N.Y. 2006). In this respect, and as stated above, the arguments submitted by Chrysler in opposition to Terry's Request for a TRO, while mistaken in their own right, utterly fail to recognize the basis for the preliminary restraining order sought by Plaintiff. Plaintiff is not arguing that either the Act or the NYFMVDA provides Terry Chrysler Jeep with the authority or "right of action" for the requested temporary restraining order. In fact, it is axiomatic that **Plaintiff need not show that it has an independent statutory basis under either the Act or the NYFMVDA granting it a "right of action" to a temporary restraining order**

2

**in order for this Court to grant Terry's Request for a TRO**. In contrast, what Plaintiff is arguing, and what was not adequately addressed by Defendant, is that Terry Chrysler Jeep is entitled to the requested temporary restraining order because it can demonstrate that the actions of Chrysler will necessarily **irreparably harm** Plaintiff by defeating its reinstatement to the Chrysler dealer network and rendering Plaintiff's dealer reinstatement arbitration award moot and either: (1) **a likelihood of success on the** merits of certain claims for relief asserted in its Complaint (i.e., that Chrysler has violated the Act [Second Claim] or the parties' arbitration award should be confirmed by this Court – [First Claim]); or (2) **sufficiently serious questions going to the merits of whether the claims asserted by Plaintiff in its Complaint** (i.e, that Chrysler has violated the Act or that the parties' arbitration award should be confirmed by this Court) to make it a fair ground for litigation and a balance of hardships tipping decidedly toward Plaintiff as the party requesting preliminary relief. *See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2nd Cir. 2006); *Innoviant Pharmacy, Inc. v. Morganstern*, 390 F.Supp.2d 179 (N.D.N.Y. 2006). As such, Chrysler's entire discussion of whether the Act or the NYFMVDA provides Plaintiff with the authority or "right of action" to enjoin Chrysler from awarding or issuing a Dealer Sales and Services Agreement to Mr. Zappone in the Mechanicville sales area is superfluous.

I. **Terry Chrysler Jeep Plaintiff Will Suffer Irreparable Harm If Chrysler Is Not Enjoined From Awarding Mr. Zappone The Proposed Dealership**

Even though Terry Chrysler Jeep fully expects to ultimately prevail in this action and be fully reinstated to the Chrysler dealer network, the relevant inquiry on this motion is whether the actions of Chrysler in seeking to re-open a dealership in the Mechanicville sales area would irreparably harm Plaintiff. In the parties' arbitration, it was Chrysler that opposed Terry Chrysler Jeep's dealership's reinstatement on the specific premise that two dealerships in the Mechanicville sales area, in such proximity, would necessarily cannibalize each other for market share. It was Chrysler that correctly argued in the parties' dealer reinstatement arbitration with Terry Chrysler Jeep, the opening of both Terry Chrysler Jeep and another dealership in the Mechanicville sales area will significantly impact both sales and service at the other dealership. At the time of the parties' arbitration, however, Clifton Park had closed and the arbitrator correctly saw fit to award reinstatement to Terry Chrysler Jeep. As such, Chrysler is hard pressed to deny that its actions will necessarily irreparably harm

3

Plaintiff by defeating its reinstatement to the Chrysler dealer network, render Plaintiff's dealer reinstatement arbitration award moot and discourage Plaintiff from proceeding with the within litigation by awarding a dealership in Terry Chrysler Jeep's own backyard (contrary to the business plan set forth by Chrysler in the parties' federally mandated arbitration). Given these facts (i.e,. that Clifton Park had closed and Terry Chrysler Jeep was awarded reinstatement in its arbitration with Chrysler), it is abundantly clear that there is no good faith reason for Chrysler's eleventh hour rush to re-open a dealership in the Mechanicville sales area.

Based upon the above facts, absent immediate and meaningful injunctive relief, Terry Chrysler Jeep's statutory claims asserted against Chrysler in this action will be rendered meaningless and Plaintiff will be irreparably be harmed. The requested injunctive relief is necessary to preserve Terry Chrysler Jeep's rights in this litigation until such time as this Court determines Plaintiff's statutory claims against Chrysler.[1] In sum, the actions of Chrysler in opening a Chrysler, Dodge and Jeep dealership in the Mechanicville area will have the practical negative effect of irreparably injuring the reinstatement of Terry Chrysler Jeep and thereby mooting Plaintiff's statutory claims asserted in this action. As such, Plaintiff is entitled to the requested temporary restraining order.

## II. Plaintiff Has Established A Likelihood Of Success On The Merits

### A. Chrysler Has Violated the Act (Plaintiff's Second Claim for Relief) As The Clear Intent Of The Legislation Was To Restore, Reinstate And Continue Previously Rejected Dealers To The Same Position As They Were Prior To Both Chrysler's And General Motors' Bankruptcy Filings

It is respectfully submitted that the evidence submitted by Plaintiff demonstrates that it is likely that it will succeed on the merits of its claims (as asserted in its Complaint) against Chrysler. As set forth in Plaintiff's moving memorandum of law, and as can plainly be inferred from the express provisions of the Act, the clear intent of the legislation was to restore, reinstate and continue previously

---

[1] While Chrysler, in opposition to the pending motion, argues that Terry's Request for a TRO should be denied because Plaintiff's injuries can be adequately redressed through money damages (Chrysler's Memorandum of Law at pages 22-23), it has, in a contradictory manner, taken the position in this litigation that the Act specifically bars Plaintiff from being awarded damages. Furthermore, the loss of a business constitutes irreparable harm that cannot be fully compensated by subsequent monetary damages. See *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124 (2d Cir. 1984) ("The loss of *Roso-Lino's* distributorship, an ongoing business representing many years of effort and the livelihood of its husband and wife owners, constitutes irreparable harm. What plaintiff stands to lose cannot be fully compensated by subsequent monetary damages. *See Semmes Motors, Inc. v. Ford Motor Company*, 429 F. 2d 1197, 1205 (2d Cir. 1970) (right to continue twenty-year old dealership "is not measurable entirely in monetary terms"); *Janmort Leasing, Inc. v.*

rejected dealers to the same position as they were prior to both Chrysler's and General Motors' bankruptcy filings. A victory at a dealer reinstatement arbitration was meant to give the terminated dealer the same status as one of the twenty two hundred (2,200) dealers assumed by Chrysler in its bankruptcy proceeding. Interpretation of the term "reinstatement" by federal courts in other cases comports with these dictionary definitions. For example, in *Hanes v. Mid-America Petroleum*, the court held that where a franchise's termination was improper, the franchisor was "required to reinstate plaintiffs' franchise on the same terms as existed before the improper termination." 577 F. Supp. 637, 648 (W.D. Mo. 1983).

In *LaBelle Chevrolet, LLC v. General Motors, LLC*, the Court specifically described what "reinstatement" entails **in the context of Section 747**. The court explained:

> *When LaBelle is reinstated, it will remain subject to the same provisions of the Dealer Agreement to which it was previously bound.....Section 747 merely provides that dealers may seek, through binding arbitration, reinstatement of their franchise agreements.* It does not, however, amend the terms of those agreements....

705 F. Supp. 2d 97, 100 (D. Mass. 2010) (emphasis added).

Another federal court recently ruled that

> Section 747 was enacted on the premises that a number of dealers were improperly terminated in the first place. Any terminated dealer was *permitted to seek reinstatement through a Section 747 arbitration.* Although the process contemplates the re-execution of a dealership agreement in the event that the covered dealer prevails, a covered dealer's success in arbitration amounts to a determination that it should not have been terminated in the first place. *The Court therefore concludes that the arbitrator's determination essentially conferred dealership status on Star [Los Feliz]..."*

(Los Feliz Ford, Inc. v. Chrysler Group, LLC, CV 10-06077, at 5 (C.D. Cal. Oct. 27, 2010) (emphasis added). These rulings confirm that "reinstatement" must be read to require Chrysler to contract with Plaintiff on the same terms and conditions that governed Plaintiff's franchise relationship with Old Chrysler- nothing more and nothing less.[2]

---

*Econo-Car International, Inc., 475 F.Supp. 1282, 1294 (E.D.N.Y. 1979)* (loss of business not compensable in monetary terms and not reducible to monetary value)."

[2] Defendant asserts that reinstatement is not available under the Act and that the sole remedy authorized under Section 747 was issuance of a Letter of Intent to be added as a new dealer. Respectfully, interpreting the statue in that manner does not give effect to the other portions of the Act which permit rejected dealers to seek "continuation, or *reinstatement* of a franchise agreement, or to be added as a franchise to the dealer network of the covered manufacturer." (Emphasis added). If

5

The Act likewise requires the arbitrator to issue a written determination that includes "a clear statement indicating whether *the franchise agreement at issue* [which necessarily must be referring to the *rejected* franchise agreement] is to be *renewed, continued, assigned* or *assumed* by the covered manufacturer." (Emphasis added).[3] Each of these options clearly contemplates that the terms of the prior franchise agreement are to survive *via* renewal, or continuation, or assignment, or assumption. The Act further specifically provides that "[s]uch continuation, reinstatement or addition shall be limited to each brand owned and manufactured by the covered manufacturer at the time the arbitration commences, to the extent that the covered dealership *had been a dealer for such brand at the time such dealer's franchise agreement was terminated,* not assigned, not renewed, or not continued." (Emphasis added). These provisions, too, are denied meaning by a conclusion that Section 747's only remedy for prevailing dealers is the customary and usual Letter of Intent that Chrysler gives prospective new dealers.[4]

Chrysler also has argued that Section 747 (b)'s authorization of "reinstatement" relief extended only to form General Motors ("GM") dealers. The argument is misplaced. First, if Congress had intended to limit the reference to "reinstatement" in Section 747(b) to only GM dealers, it surely would have done so expressly; instead, Congress made Section 747(b) applicable to all "covered dealers" as defined in the Act. Second, Section 747's first legislative predecessor, H.R. 2743, refers expressly to Old Chrysler in authorizing reinstatement, and a subsequent proposed bill, Section 745 (c) of H.R. 3710, authorized reinstatement of rejected dealers by "[a]ny automobile manufacturer with respect to which the Federal Government has a financial or ownership interest." Since there were only two such manufacturers, the conclusion is inescapable that Congress intended that the "reinstatement" remedy articulated in all three related pieces of legislation be available to both former Chrysler

---

Congress intended that the only relief a dealer would receive after prevailing in its Section 747 arbitration was a Letter of Intent to be added as a new dealer, it would not also have provided for "continuation" and "reinstatement" as alternative forms of relief. Stated another way, construing Section 747 to authorize only a Letter of Intent as the remedy for prevailing dealers renders meaningless two out of three of the type of relief that Congress articulated in the Act. It is a black letter rule of statutory construction that all words in a statue are to be given effect. *Hackwell v. U.S.,* 491 F.3d 1229, 1237 (10th Cir. 2007).

[3] In the context of the Act, "reinstatement and "renewal" of a rejected dealer's franchise are synonymous.
[4] As Chrysler is the new entity that emerged from Old Chrysler's bankruptcy as its successor, the "reinstatement" relief authorized by the Act and awarded by the arbitrator necessarily requires that Plaintiff be given a new franchise agreement with Chrysler. Chrysler seizes on the fact that, as a new entity, it never had a contract with Plaintiff. Recognizing the availability of reinstatement relief under Section 747 to prevailing dealers simply construes all of the provisions of Section 747 together to best clarify Congress' intent: the new agreement must conform to the contractual and legal relationship that Plaintiff previously had with Old Chrysler.

6

and GM dealers, and that this intent did not change when Congress enacted Section 747 as the substitute for the two previous bills. Furthermore, Section 747(b)'s reference to "covered manufacturer" applies interchangeably to Old Chrysler and Chrysler. Likewise, as stated above, Section 747(d) provides for the arbitrator's award to state "whether *the franchise agreement at issue* [i.e., the rejected franchise] is to be renewed, continued, assigned or assumed by the *covered manufacturer*" – i.e., both Chrysler and GM. As such, each of these options available to the arbitrator necessarily is to be applied to the *rejected* franchise agreement. (Emphasis added). Chrysler's hyper-technical and tortured argument that because it is a new entity there is no contract that can be reinstated is simply at odds with the intent of Section 747 and reinstatement properly should be understood to mean that Congress intended that Chrysler will add dealers that were victorious at their arbitrations to its dealer network by entering into a franchise agreement and relationship that replicates that which is existed with Old Chrysler prior to the bankruptcy.

Finally, Defendant disingenuously relies upon a Memorandum Opinion & Order in the action entitled *Quality Jeep Chrysler Inc. v. Chrysler Group, LLC*, No. 10-900 (D.N.M. March 22, 2011) for the proposition that Terry Chrysler Jeep is asking "this Court to do what the Quality court expressly rejected, namely to hold that not only is Terry's rejected franchise agreement to be reinstated, but that Terry 'magically' becomes an existing dealer **with commensurate rights to enjoin a replacement dealer under the state franchise act.**" Chrysler Memorandum of Law at page 16 (Emphasis added). Under any interpretation of Plaintiff's motion, **this is clearly not what Plaintiff is arguing**. Chrysler's thinly veiled attempt to inject into this record the remarkably dissimilar factual predicate of the Quality Jeep case speaks volumes as to the merits of Chrysler's opposition. The decision in the Quality Jeep action is by no means "on all fours" with the issues raised in either Plaintiffs' Complaint or Terry's Request for a TRO, and in fact, draws a contrast to underscore that the relief requested herein is appropriate.

In the Quality Jeep action, the plaintiff sought to enjoin the award of a franchise to a neighboring dealer under both the Act and the relevant State franchise law. Here, as stated above, Plaintiff is not arguing that either the Act or the NYFMVDA provides it with a "right of action" to enjoin Chrysler from appointing a replacement dealer or taking any other dealer network action. To the contrary, Plaintiff is arguing that it is entitled to the requested temporary restraining order because the actions of Chrysler will necessarily irreparably harm Plaintiff

7

by defeating its reinstatement to the Chrysler dealer network, render Plaintiff's dealer reinstatement arbitration award moot and discourage Plaintiff from proceeding with the within litigation by awarding a dealership in Terry Chrysler Jeep's own backyard. More importantly, the replacement dealer in the Quality Jeep action was awarded its franchise **before** the enactment of Section 747 and, therefore, prior to any arbitration award received by Quality Jeep that its franchise should be reinstated. In stark contrast, the actions of Chrysler herein have taken place long **after** Plaintiff was awarded reinstatement through its arbitration with Chrysler. Furthermore, it was Chrysler that opposed Terry Chrysler Jeep's dealership's reinstatement on the specific premise that two dealerships in this Mechanicville sales area, in such proximity, would necessarily cannibalize each other for market share. As such, it is simply inequitable for Chrysler, after basing its entire opposition to the reinstatement of Terry Chrysler Jeep upon the premise that the Albany sales market/locality could not support both Terry Chrysler Jeep and another Mechanicville sales area dealership, to now attempt to reopen such other dealership **after** the enactment of Section 747 and **after** Terry Chrysler Jeep was awarded the reinstatement of its Chrysler franchise. As such, it is abundantly clear that Chrysler's reliance upon the Quality Jeep Memorandum Opinion & Order is entirely misplaced.

### B. The Arbitrator In The Parties Arbitration, Conducted Pursuant To The Act Directed That Plaintiff's "Covered Dealership [Be] Renewed" - Even Assuming The Award Was In Error, Chrysler Is Bound By It And The Court's Role Is Limited To Enforcing It (Plaintiff's First Claim for Relief)

Congress, in the Act, authorized a rejected dealer to seek and obtain an arbitration award of reinstatement or renewal. Here, the Arbitrator in the parties' arbitration, conducted pursuant to the Act, directed that Plaintiff's "**covered dealership [be] renewed**". As such, this Court must therefore "give extreme deference to the determination of the [arbitrator]." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001) (internal quotation marks & citation omitted). "Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir. 1982). More importantly, Section 747 authorizes no appeal or other judicial review of an arbitrator's award. *Tysinger Motor Co. v. Chrysler Group, LLC,* No. 3:10 CV554, 2011 WL 63866, at *3 (E.D. Va. Jan. 7, 2011) ("Congress did not provide in section 747 any authority under which a party can appeal, move to vacate, or move to stay the arbitrator's determination, although it certainly could have done so."); *In re Motors Liquidation Co.,* No. M-47, 2010 WL 44449425, at *5 (S.D.N.Y. Oct. 29, 2010) ("The

8

Act contains no provision stating that the decisions in the arbitrations are subject to judicial review...."). Thus, any argument that may be raised by Chrysler that the reinstatement award in Plaintiff's favor was in error is academic.

In the same vein, even if one was to assume that the Federal Arbitration Act's authorization of vacatur of an arbitration award where the arbitrators have "exceeded their powers," 11 U.S.C. § 10(a)(4), was applicable to Section 747, any argument that may be raised by Chrysler that the reinstatement award in Plaintiff's favor would still fail on the merits. Indeed, "[c]ourts play only a limited role when asked to review the decision of an arbitrator. The courts *are not authorized to reconsider the merits* of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987). Thus, even if Section 747 can be analogized to an arbitration agreement, in that it is the source of the arbitrators' authority, it contains no "plain limitation" on the scope of the arbitrator's authority to award reinstatement. On the contrary, Section 747 could not more patently authorize a rejected dealer "to seek [and obviously empower an arbitrator to award], through binding arbitration"...reinstatement of a franchise agreement." Section 747(d) confirms Congress' intent that the arbitrator shall specify in his written determination whether the rejected franchise agreement is to be "renewed"-or as defined by the dictionary ("restore[d] to existence." *Merriam-Webster Online Dictionary,* http://www.merriam-webster.com/dictionary/renew - last visited March 23, 2011). Simply stated, in this case, in determining that Section 747 authorized him to order reinstatement, Arbitrator Bilbo unquestionably was "construing or applying the [statute] and acting within the scope of his authority." *United Paperworkers*, 484 U.S. at 38. No grounds therefore exist for vacating his award, and this Court's responsibility is limited to enforcing it.

    C.    **Plaintiff Is Entitled to Confirmation of the Arbitration Award**

While Section 747 did not provide enforcement procedures for arbitration awards given to prevailing automobile dealers, Congress did make the arbitration award "binding." (Section 747(b).) In the context or arbitration agreements, courts regularly hold under the Federal Arbitration Act that a clause making arbitration binding implicitly creates consent to enforcement of the award in court. *See Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 276 (1932); *Pennsylvania Eng'g Corp. v. Islip Res. Recovery,* 710 F. Supp. 456, 460 (E.D.N.Y. 1989) by agreeing that arbitration award would be final and binding, parties implicitly consented to its

enforcement in court); *Ruby-Collins, Inc. v. City of Huntsville*, 748 F.2d 573, 576 (11th Cir. 1984) (same). *See also I/S Stavborg v. Nat'l Metal Converters, Inc.* 500 F.2d 424, 427 (2d Cir. 1974 ("Whatever 'final' means, it at least expresses the intent of the parties that the issues joined and resolved in the arbitration may not be tried de novo in any court, state or federal"; consent to entry of judgment on arbitral award presumed. That Congress made Section 747 binding should be taken as evidence of its intent to preserve post-award enforcement by the courts.

### III. A Balance Of The Hardships Weighs In Favor Of The Injunction

Assuming <u>arguendo</u>, the Court determines that Terry Chrysler Jeep has not established a likelihood of success on the merits, which it has, Plaintiff has otherwise established: (a) sufficiently serious questions going to the merits; and (b) and that a balancing of the hardships tips decidedly in its favor. In this Circuit, courts have held that conflicting accounts of the facts and circumstances by the litigating parties establish sufficient serious questions going to the merits for purposes of justifying the issuance of a preliminary injunction. *Alan Skop, Inc. v. Benjamin Moore, Inc., 909 F.2d 59* (2d Cir. 1990). Here, as more fully set forth in the Reply Affidavit of Charles Morris, the balancing of hardships in this case clearly favors granting a preliminary injunction in order to preserve the status quo. Simply stated, and despite Chrysler and Mr. Zappone's arguments to the contrary, Terry's Request for a TRO is precisely necessary because Mr. Zappone, the proposed dealer chosen by Chrysler to open a Chrysler, Jeep and Dodge dealership in the Mechanicville sales area, has yet to make any substantial investment in either purchasing or building a dealership facility.

### CONCLUSION

Based upon the foregoing, it is respectfully submitted that Plaintiffs' motion for a temporary restraining order and preliminary injunction should be granted in its entirety.

Dated: Mineola, New York
April 29, 2011

Respectfully submitted,

BELLAVIA GENTILE & ASSOCIATES, LLP
Steven Blatt (SHB 6792)
200 Old Country Road
Mineola, New York 11501
516-873-30