C/m

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
EAGLE AUTO MALL CORP., TERRY
CHRYSLER JEEP, INC., JHS BUSINESS
ASSOCIATES INC. D/B/A/ CROSSROADS
SUPERSTORE, and WESTMINSTER
DODGE, INC.,

Plaintiffs,

-against-

CHRYSLER GROUP, LLC,

Defendants.
------------------------------------------------------X

APPEARANCES:

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N Y

★ DEC 23 2011 ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 10-3876

(Wexler, J.)

BELLAVIA GENTILE & ASSOCIATES, LLP
BY: LEONARD A. BELLAVIA, ESQ.
    STEVEN BLATT, ESQ.
Attorneys for Plaintiffs
200 Old Country Road Suite 400
Mineola, New York 11501

WILMER CUTLER PICKERING HALE & DORR LLP
BY: GEORGE MYKULAK, ESQ.
    ROBERT D. CULTICE, ESQ.
60 State Street
Boston, MA 02109
Attorneys for Defendant

WILMER CUTLER PICKERING HALE & DORR LLP
BY: NICOLE FEIT, ESQ.
    PETER J. MacDONALD, ESQ.
399 Park Avenue
New York, NY 10002

1

WEXLER, District Judge

Plaintiffs in this action, Eagle Auto Mall Corp. ("Eagle"), and Terry Chrysler Jeep, Inc. ("Terry") are automobile dealerships that were terminated in connection with the bankruptcy of Chrysler LLC, and certain of its subsidiaries and affiliates ("Old Chrysler").[1] Defendant Chrysler Group, LLC., ("New Chrysler") is the entity that purchased certain of the assets in the bankruptcy of Old Chrysler. Plaintiffs challenge the implementation by Defendant of their rights under a statute passed after the Old Chrysler bankruptcy. That statute, Section 747 of the Consolidated Appropriations Act of 2010 (the "Section 747" or the "Act"), was passed to grant certain rights to dealerships terminated as a result of the bankruptcy of, inter alia, Old Chrysler.

Presently before the court are the parties' cross motions for summary judgment. Those motions are directed to the two remaining causes of action in Plaintiffs' complaint. For the reasons, and to the extent set forth below, Plaintiffs' motions are denied and Defendant's motion is granted.

## BACKGROUND

I. The Parties, the Bankruptcy of Old Chrysler and the Rejection of Dealerships

Eagle and Terry are New York corporations that are located in the State of New York. Both Plaintiffs were automobile dealerships that had dealership contracts with Old

---

[1] This case was commenced by four separate dealerships. Two have since settled, leaving as Plaintiffs Eagle Auto Mall Corp. and Terry Chrysler Jeep, Inc. as Plaintiffs.

2

Chrysler. On April 30, 2009, Old Chrysler (which is not a party hereto) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, with the approval of the Bankruptcy Court, Old Chrysler sold substantially all of its assets to an entity that became Defendant New Chrysler. In connection with the asset sale, Old Chrysler sought relief with respect to its obligations pursuant to its dealer network. That network consisted, at the time of the bankruptcy, of over 3,000 dealerships. Old Chrysler sought to transfer approximately 2,400 of its dealerships to New Chrysler, and to reject its dealership agreements with the remaining 789. In June of 2009, the Bankruptcy Court approved Old Chrysler's request to reject its contracts with the 789 non-assumed dealerships, and the asset sale to New Chrysler went forward as planned. Plaintiffs here are two of the 789 dealerships terminated pursuant to the asset sale.

II.     The Act

After the bankruptcy of Old Chrysler and the closing of the sale to New Chrysler, Congress began to consider measures to intervene on behalf of the rights of terminated dealers. Dealership rights considered, and ultimately included within the Act, include not only the rights of those terminated in connection with the Old Chrysler bankruptcy, but also those dealers affected by the bankruptcy of General Motors ("GM"). GM, like Old Chrysler, acted within its bankruptcy proceeding to shrink the size of its dealer network. Old Chrysler reduced the size of its network by obtaining, as set forth above, Bankruptcy Court permission to reject ongoing dealership agreements. GM accomplished the same objective by assigning its dealership agreements to the GM entity emerging from

bankruptcy, subject to winding-down provisions of those agreements. In any event, although by different means, the bankruptcies of both Chrysler and GM resulted in a number of terminated dealerships.

Terminated dealers, citing the government's financial assistance and partial ownership interests in Chrysler and GM, turned to Congress for protection against the termination of their businesses. The record before the court includes bills introduced in the House of Representatives discussing the issues raised by terminated dealers that were ultimately addressed by the Act. See H.R. 2743, 111th Cong., §3(b) (2009) ("House Bill 2743"); H.R. §2170, 111th Cong., §745(b)(2009) ("House Bill 2170") (collectively the "House Bills"). House Bill 2743 refers to itself as a bill to "restore the economic rights of automobile dealers." The language used in House Bill 2743, but ultimately rejected in the Act, states that "at the request of an automobile dealer," Chrysler and/or GM "shall restore the franchise agreement . . . that was in effect prior to the commencement of their respective bankruptcy cases." House Bill 2743 §3(b) (emphasis added). Similarly, House Bill 3170 requires post-bankruptcy automobile manufacturers to enter into dealership agreements with terminated dealers "on the same terms and conditions as existed immediately before [the date of the commencement of bankruptcy proceedings]." House Bill 3170 §745(b).

After considering alternatives, Congress passed the Act. While the Act gives terminated dealerships the right to seek continuation, reinstatement or to be added to dealership networks through a statutorily created binding arbitration procedure, it does

not use the mandatory reinstatement language of the House Bills. See generally H.R. 3288-186 §747 (hereinafter cited as "§747"). Instead, the Act gives dealerships terminated by "covered manufacturers," which definition includes Chrysler and GM, the right to participate in binding arbitration to seek "continuation, or reinstatement of a franchise agreement or to be added as a franchisee to the dealer network" . . . . §747(2)(b). Terminated dealerships were given 40 days from enactment of Section 747 in which to seek arbitration, and the Act set limits on the time in which the arbitrator was required to reach a decision. See §747(2)(d). The Act provided specific rules for the conduct of arbitration and the remedy available. Under the Act, a prevailing dealership is not automatically "restored" to the dealership network, but is entitled to be awarded the "customary and usual letter of intent to enter into a sales and service agreement." §747(e). This is the sole remedy provided for in the Act, which states specifically that the arbitrator "shall not award compensatory, punitive or exemplary damages to any party." §747(e).

III.  The Plaintiff Dealerships and the Results of Their Arbitrations

Plaintiff dealerships Eagle and Terry sought arbitration under the Act and prevailed. In both cases, the arbitrator's decision states that each dealership agreement "shall be renewed and therefore shall be assumed by [Chrysler] in the manner provided for by the Act and in accordance with the terms and conditions of the Act." After these rulings, both Eagle and Terry were offered letters of intent from Defendant. New Chrysler takes the position that the letters of intent offered are the "customary and usual" letters of

5

intent contemplated by the Act. Plaintiffs take the position that the letters of intent offered by Defendant are not the "customary and usual" documents required by the Act. Instead, they characterize the offers made by Defendant as "unreasonable and unconscionable," and offered only to those dealers who sought and won reinstatement through arbitration. It is Plaintiffs' position that they are entitled to be fully reinstated to their dealerships under the same terms and conditions that governed their business relationships with Old Chrysler. Plaintiffs expressed their positions to Defendant and, after the parties attempted, unsuccessfully, to negotiate mutually agreeable new letters of intent, Plaintiffs filed this action.

IV. The Complaint

Plaintiffs' complaint, as originally filed, set forth five separate causes of action. Two of those causes of action, the first and third, remain. The first cause of action seeks an order confirming the arbitration award, and a judgment in conformity therewith. Plaintiffs' third cause of action seeks a declaratory judgment that Defendant has failed to offer Plaintiffs the customary and usual letter of intent as required by the Act.

V. The Motions

Presently before the court are the parties' cross motions for summary judgment with respect to the remaining causes of action. At issue are the questions of whether the court has jurisdiction to confirm the arbitration awards, and whether the decisions of the arbitrators entitle Plaintiffs to be reinstated under the same terms as provided by their pre-bankruptcy dealership agreements with Old Chrysler. After setting forth applicable legal

principles, the court will turn to the merits of the motion.

## DISCUSSION

I. Jurisdiction

Plaintiffs seek adjudication of their claim for confirmation of the arbitrator's decision. While the Act provides for arbitration by terminated dealers, it provides for neither judicial review, vacatur, nor confirmation of the arbitrator's decision. Thus, unlike consensual arbitration among parties, there is no jurisdiction under the Act for proceedings to "confirm" or "vacate" the arbitrator's decision. Accord Tysinger Motor Co., Inc. v. Chrysler Group, LLC, 2011 WL 63866 *3 (E.D. Va. 2011). In view of the fact that this court does not have jurisdiction to review or confirm this matter under the Act, the court must consider an alternate source for the exercise of jurisdiction.

The court holds that jurisdiction to decide this matter is an appropriate exercise of its federal question jurisdiction under 28 U.S.C. §1331. The court further holds that the issues presented raise a claim or controversy sufficient to confer jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 (the "DJ Act"). The DJ Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Actual cases or controversies that may be adjudicated under the DJ Act are those that "are justiciable under Article III" of the Constitution. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). Such cases raise a "real and substantial" adversity of interests

and the court's opinion therefore amounts to more than an advisory opinion as to "what the law would be upon a hypothetical state of facts." Nike, Inc. v. Already, LLC, 2011 WL 5429154 *5 (2d Cir. 2011), quoting, MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). The issues raised here, i.e., whether the Act entitles Plaintiffs to reinstatement of their pre-bankruptcy dealership agreements, and the related question of whether they have been offered the "customary and usual letter of intent," constitute controversies over which this court may exercise jurisdiction.

II. Standards on Motion for Summary Judgment

This case is before the court on the parties' cross-motions for summary judgment. The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (summary

judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

III.   Disposition of the Motions

While the parties have interposed cross-motions for summary judgment, the issues raised are essentially mirror images of each other. Thus, each parties' motion seeks an order that they have complied with the Act and are entitled to relief.

The core of Plaintiffs' claim is the argument that the Act clearly and unequivocally entitles them to be reinstated as Chrysler dealers under the same terms and conditions that governed their business relationship with now-bankrupt Old Chrysler. In support of their argument, Plaintiffs rely on the arbitrator's determination that their dealerships shall be "renewed," and assumed by the manufacturer. Plaintiffs also rely on the Act's language stating that as dealers, they were granted the right to seek "continuation, or reinstatement of a franchise or franchise agreement . . . ." Finally, Plaintiffs cite to the language in the House Bills described above, comments in the Congressional Record, and a letter written by a local Member of Congress in support of Plaintiffs' position. Defendant's motion takes the opposite position, arguing that the Act confers no right to reinstatement of agreements properly terminated by order of the Bankruptcy Court, but requires only that it extend to prevailing dealerships a customary and usual letter of intent to enter into a new business relationship. The court has considered the parties' arguments and, like the only other court that has considered claims almost identical to those raised here, agrees with Defendant. See Quality Jeep Chrysler,

Inc. v. Chrysler Group, No. 10-900–PJK-RHS (D. New Mexico, August 18, 2011).

First, despite the arbitrator's stated determination that Plaintiffs "shall be renewed," the decision also states that Plaintiffs are entitled to such relief "in the manner provided for by the Act and in the terms and conditions of the Act." Thus, the relief granted in the arbitrator's determination, despite and the language of "renewal," is limited by and, as it must be, governed by the Act. Turning to the Act, Plaintiffs rely upon the language granting dealers the right to seek "continuation, or reinstatement . . . ." That language is followed, however, by a clause which states, "or to be added as a franchisee to the dealer network of the covered manufacturer . . . ." Thus, the sentence, when read in its entirety, indicates that terminated dealers will seek either: (1) reinstatement; (2) continuation or (3) to be <u>added</u> as a franchisee. §747(b) (emphasis added).

While these clauses appear to suggest different approaches available to the arbitrator, these seemingly alternative approaches do not suggest options. Instead, they reflect the different legal positions of terminated Chrysler and GM dealers. Unlike terminated Chrysler dealers, terminated GM dealers maintained a post-bankruptcy contractual relationship with the new GM entity, and could therefore be "reinstated" (if they were terminated after the assumption of their contracts) or "continued," in that relationship (if they were subject to winding down, but had not yet been terminated). Terminated Chrysler dealers, however, such as Plaintiffs, never had any contractual relationship with New Chrysler. In the absence of such relationships, terminated Chrysler dealers, could not be "reinstated," or "continued" in their dealerships agreements.

Instead, those dealers were given the right, under the Act, to be "added" as franchisees.

The Act's language setting forth the remedy available to prevailing dealers was no doubt chosen because it can be applied to both terminated GM and Chrysler dealers. Thus, the remedy of providing the dealer with "a customary and usual letter of intent to enter into a franchise agreement," §747(e), refers to terms being offered in the post-bankruptcy incarnations of both Chrysler and GM, companies operating in the present, rather than prior to 2009. While such language may be interpreted to require pre-bankruptcy terms that might apply to terminated GM dealers, it can also refer to the letters of intent that are usual and customary at the time of the offer.

As the foregoing discussion makes clear, the court finds no ambiguity in the language of the Act. Therefore, it is unnecessary to consider any legislative intent that might appear either in the House Bills or the Congressional Record. Even consideration of such unnecessary legislative history, however, would lead the court to the same conclusion already reached. First, as to the House Bills, it is clear that when passing the Act, Congress specifically chose not to include mandatory restoration language, opting instead for the language referred to above. Nor do the comments of House Legislators, cited by Plaintiffs as set forth in the Congressional Record of December 10, 2009, compel a different result. To the contrary, those comments refer consistently to the possibility of being "added" to a dealer network, and do not refer to mandatory restoration of pre-bankruptcy status. See, e.g., 155 Cong. Rec. H14475 (2009) (statements of Congressman LaTourette and Van Hollen). The court similarly declines to rely upon the submitted

11

letter of a local Congressional Representative expressing the position that the Act requires that Plaintiffs be restored to their pre-bankruptcy dealership status. Such a statement of an individual legislator's intent is unnecessary to consider in light of what the court has held to be a clear and unambiguous statute.

Having decided that Defendant was not required, under the terms of the Act, to reinstate Plaintiffs to their pre-bankruptcy status as dealers, the court turns to the issue of whether Plaintiffs have, as argued by Defendant, been offered the statutory customary and usual letter of intent to enter in franchise agreements. While Plaintiffs are now foreclosed in this action from arguing that the statutorily required letter of intent must express the terms of their pre-bankruptcy status, there remains an open question as to whether the letters of intent offered to Plaintiffs constitute the customary and usual letters of intent offered to all potential franchisees at the time of the offering. That issue raises questions of fact that cannot be determined in the context of this motion.

IV. Remaining Conduct of the Litigation

In accord with the foregoing, the court denies Plaintiffs' motion for summary judgment seeking an order declaring that they be reinstated to their pre-bankruptcy dealership agreements. The court grants Defendant's motion to the extent it sought an order declaring that it is not required to reinstate Plaintiffs as Chrysler dealers under the same terms and conditions that applied prior to the bankruptcy of Old Chrysler. The motions are otherwise denied. The court limits the trial in this matter to the issue of whether Plaintiffs were offered the customary and usual letter of intent to enter into

franchise agreements as set forth above. The parties shall file their pretrial orders accordingly, and in the time frame set forth by the assigned Magistrate Judge.

## CONCLUSION

For the foregoing reasons, and to the extent set forth above, Plaintiffs' motions for summary judgment are denied and Defendant's motion is granted. The Clerk of the Court is directed to terminate the motions appearing in this matter at docket entries 69 and 74.

SO ORDERED

s/ L. D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
December 23, 2011