# BELLAVIA GENTILE
## & ASSOCIATES, LLP
ATTORNEYS AT LAW

200 OLD COUNTRY ROAD • SUITE 400
MINEOLA, NEW YORK 11501
www.DealerLaw.com

TELEPHONE 516-873-3000
FACSIMILE 516-873-9032

LEONARD A. BELLAVIA
JOHN G. GENTILE

STEVEN H. BLATT
MICHAEL S. FINZ
WILLIAM G. GOODE

Counsel
KENNETH F. McCALLION
THOMAS A. HOLMAN
MARK W. GAFFNEY
JANE K. CRISTAL
PETER D. BARON
GAIL M. BLASIE

January 12, 2012

VIA ECF AND FEDERAL EXPRESS

Honorable Leonard D. Wexler
United States District Court – Eastern District of New York
Long Island Federal Courthouse
944 Federal Plaza
Central Islip, New York 11722

      Re:  Eagle et. al. v. Chrysler Group LLC
            CV 2:10-CV-03876

Dear Judge Wexler:

      This firm represents plaintiffs in the above-referenced action. The purpose of this letter is to respond to the January 5, 2012 letter of defendant Chrysler Group LLC ("Chrysler" or "Defendant") requesting a "pre-motion conference to discuss Chrysler's intention to move for reconsideration of that aspect of the Court's December 23, 2011 Memorandum and Order (Dkt. 88) ("Opinion") that found a triable issue of fact as to whether the letters of intent that New Chrysler offered to Plaintiffs Eagle Auto Mall Corp. and Terry Chrysler Jeep, Inc. ("Plaintiffs') constituted New Chrysler's 'customary and usual" letters of intent" or, in the alternative, "move for summary judgment on the 'customary and usual' issues, as to which no trial is necessary." The contentions of Chrysler in support of its letter application are incorrect and, for the reasons stated below, Defendant's letter request for a pre-motion conference should be denied.

      "[T]he standard for granting a motion for reconsideration is "strict." *Laina v. Uunited Cerebal Palsy of New York City, Inc.*, 2012 WL 28291 (E.D.N.Y. 2012); citing, *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* Reconsideration is appropriate where movant demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id., citing In re Bear Stearns Companies, Inc.*, 2011 WL 4063685, *1–*2 (S.D.N.Y. Sept.13, 2011) (internal citations omitted). *See also Dira Realty, LLC/CMP Improvements, Inc. v. Local 1031*, 2010 WL 5449851, *2–*3 (E.D.N.Y. Dec.28, 2010). Here, as shown below, Chrysler

has failed to satisfy any of the elements needed to grant a motion for reconsideration and its letter request for a pre-motion conference should be denied in its entirety.

First, it is clear that the neither of the parties' summary judgment motions substantially addressed the issue of fact ultimately found by the Court in its Memorandum and Order to require a trial (i.e., "[t]he Court limits the trial in this matter to the issue of whether the Plaintiffs were offered the customary and usual letter of intent to enter franchise agreements . . ." Memorandum and Order at pages 12-13. Indeed, Your Honor's memorandum and Order expressly provided that "[p]resently before the Court are the parties' cross motions for summary judgment . . . At issue are the questions whether the court has the jurisdiction to confirm the Plaintiffs' arbitration awards, and whether the decisions of the arbitrators entitled Plaintiffs to be reinstated under the same terms as provided by their pre-bankruptcy dealership agreements with Old Chrysler." Memorandum and Order at page 6. As such, any argument that Plaintiffs somehow conceded that the issue of whether the letters of intent that Chrysler offered to Plaintiffs constituted "customary and usual" letters of intent are legal in nature (and not factual in nature) one is without logic or support. In sum, even it can be said that the summary judgment motions did not address the factual issue as to whether the Plaintiffs were offered a customary and usual letter of intent, Chrysler should not be permitted at this point to delay the trial of this matter any further by filing a second summary judgment motion.

Second, Plaintiffs never "conceded that all issues remaining in this case after the stipulated dismissal of three of the five counts in the Complaint were legal in nature." Indeed, the Stipulation, a copy of which is attached hereto as Exhibit A, clearly provides that "Nothing contained in this stipulation, nor the parties' actions pursuant to this stipulation, shall prejudice, compromise, restrict, limit, impede, inhibit or have any effect or consequence whatsoever upon the parties' prosecution and defense of the First and Third Claims for Relief that have been asserted in Plaintiffs' Complaint and Defendant Chrysler Group LLC's Answer and Counterclaim and Request for Relief, all of which survive the dismissal with prejudice of the Second, Fourth and Fifth Claims for Relief."

It can not seriously be argued that a question of fact does not exist in this case as the very documents produced by Defendant to Plaintiff in this litigation demonstrate that there is a disparity between the letters of intent Plaintiffs received and other letters of intent provided by "New" Chrysler[1] to other dealers. Stated otherwise, the documents produced by Chrysler, at a minimum, raise a genuine issue of material fact as to "whether the Plaintiffs were offered the customary and usual letter of intent to enter franchise agreements . . ." Memorandum and Order at pages 12-13. As an example, unlike the letters of intent received by Plaintiffs (Exhibit B) in which Chrysler would not provide Plaintiffs with any new Chrysler motor vehicles for sale to the general public unless and until Plaintiffs complete a facility renovation in a manner that has been solely prescribed by Chrysler, Chrysler provided certain dealers with letters of intent (See Exhibit C) which permitted them to sell vehicles **prior to** the construction or renovation of a facility meeting Chrysler's standards. Additionally, attached hereto as Exhibit D, are just a small sample of the letters of intent in which other post bankruptcy "New" Chrysler dealers were not required to provide Chrysler with an option to lease or purchase the dealership facility, as was the case

---

[1] Plaintiffs will also argue at the trial of this action that "New" Chrysler certainly had no prior relationship with the over 2,000 dealers that it assumed during "Old" Chrysler's bankruptcy proceeding and any analysis of whether the Plaintiffs were offered the customary and usual letter of intent to enter franchise agreements" (Memorandum and Order at pages 12-13) must include an analysis of the letters of intent received by these dealers. Of course, these dealers received no letters of intent from Chrysler.

with respect to the letters of intent issued to the Plaintiffs (See Exhibit B – paragraph 8h of each letter). Simply stated, based upon these documents, it is unfathomable how Chrysler can contend that the Court's decision to "limit[] the trial in this matter to the issue of whether the Plaintiffs were offered the customary and usual letter of intent to enter franchise agreements,", could in any way merit reconsideration. It is respectfully submitted that Chrysler's own documents are damning to Chrysler's current application and demonstrate its frivolousness.

Fourth, despite Defendant's assertions to the contrary, it is well aware that Plaintiffs pleadings and discovery responses have raised a genuine issue of material fact as to whether the letter of intent received by Plaintiffs from Chrysler were customary and usual and any contention otherwise by Chrysler is simply disingenuous.[2]

For all the foregoing reasons, Defendant's letter request for a pre-motion conference should be denied.

Respectfully submitted,

BELLAVIA GENTILE & ASSOCIATES, LLP

By: _____
STEVEN BLATT (SHB 6792)

CC: Magistrate Judge Gary R. Brown (VIA Federal Express)
  George Mykulak, Esq. (via email)
  Joseph Mead, Esq. (via email)

---

[2] Specifically, Plaintiff's Complaint (a copy of which is attached hereto as Exhibit E) alleges that, among other things, Chrysler's Letter of Intent **is neither customary or usual** in each of the following ways: (a) the Plaintiffs must waive certain rights that may be provided it under applicable state motor vehicle franchise statutes such as protest rights that it may possess in the event that a new dealer is added in the Plaintiffs' market area; (b) Chrysler will not provide Plaintiffs with any new Chrysler motor vehicles for sale to the general public unless and until Plaintiffs complete a facility renovation in a manner that has been solely prescribed by Chrysler; (c) Plaintiffs must provide Chrysler with an option to lease or purchase the Plaintiff's dealership facility; and (d) Chrysler's proposed Letter of Intent indicates that, prior to entering into a sales and service agreement with any of the Plaintiffs, Chrysler would "give notice to the state and/or dealers as may be required by state law," even though the Act preempts state law on the issue of such a challenge and affords no third party with any putative right to challenge the reinstatement of a prevailing dealer.

Likewise, Plaintiff's Interrogatory Responses (copies of relevant pages are attached hereto as Exhibit E) expressly advised Chrysler that: "Plaintiff states that Chrysler Group has failed and refused to issue to Plaintiffs a customary and usual letter of intent to enter into a sales and service agreement because, among other things:

- To the extent any assumed dealer was or is required to make any facility renovations, such dealers were or are permitted to continue to sell new Chrysler vehicles and complete such required renovations over an agreed upon period of time;
- To the extent that Chrysler "backfilled" Chrysler, Jeep or Dodge line makes formerly belonging to those dealers who Sales and Services Agreements were rejected in Old Chrysler's Bankruptcy Proceedings, and to the extent such dealer was or is required to make any facility renovations, such dealers were or are permitted to continue to sell new Chrysler vehicles and complete such required renovations over an agreed upon period of time