UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

EAGLE AUTO MALL CORP., TERRY CHRYSLER
JEEP, INC., JHS BUSINESS ASSOCIATES INC. D/B/A
CROSSROADS SUPERSTORE, and WESTMINSTER
DODGE, INC.

CIVIL ACTION NO.
2:10-CV-03876
(LDW)(ETB)

                          Plaintiffs,

           -against

CHRYSLER GROUP, LLC,

                          Defendant.
------------------------------------------------------------------X


### MEMORANDUM OF LAW OF PLAINTIFFS IN OPPOSITION TO DEFENDANT CHRYSLER GROUP LLC'S MOTION FOR RECONSIDERATION


BLATT GENTILE & ASSOCIATES,
LLP
Leonard A. Blatt, Esq.
Steven H. Blatt, Esq.
200 Old Country Road
Mineola, New York 11501
516-873-3000

# TABLE OF CONTENTS

TABLE OF AUTHORITES ……………………………………………..……….…......

PRELIMINARY STATEMENT…………………………………………….............1

FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT……..…...……....1

RELEVANT LEGAL STARNDARD……..……………………………………………4

    A.   Plaintiffs Clearly And Unambiguously (A) Notified Defendant That One Of Their Claims Was That Defendant Violated The Act By Failing To Provide Plaintiffs With A "Customary And Usual" Letter Of Intent And (B) Specifically, And Repeatedly, Identified To Defendant The Factual Basis As To Why The Letters Of Intent That They Received From Chrysler Were Not "Customary And Usual" ……..……………..…...........5

    B.   Plaintiffs Never Conceded That The Issue Of Whether The Letters Of Intent That Defendant Offered To Plaintiffs Constituted "Customary And Usual" Letters Of Intent Is Legal In Nature And Could Be Resolved As A Matter Of Law…………………………………………………………11

    C.   Defendant Should Not Be Granted Permission to File, Yet Another, Summary Judgment Motion ……………………………………………16

    D.   It Would Be Manifestly Unjust To Plaintiffs If Either Defendant's Motion For Reconsideration Was Granted Or Chrysler Was Granted Permission To File Yet Another Summary Judgment Motion ………………………18

CONCLUSION ……………………………………………………………………20

## TABLE OF AUTHORITIES

**CASES:**

Ancile Investment Company Limited v. Archer Daniels Midland Company,
2011 WL 3516128 (S.D.N.Y.2011) ………………………………………..…….15

Dira Realty LLC/CMP Improvements, Inc., v. Local 1031,
2010 WL 5449851, *2-*3 (E.D.N.Y. Dec 28, 2010) …………………………………5

Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.,
440 F.3d 571,578 (2nd Cir. 2006) …………………………………………………..11

In re Bear Stearns Companies, Inc., 2011 WL 4063685,
*1-*2 (S.D.N.Y. Sept 13, 2011) …………………………………………………….4, 5

Laina v. United Cerebral Palsy of New York City, Inc.
2012 WL 28291 (E.D.N.Y. 2012)……………………..………………………………4

National Labor Relations Board v. Consolidated Bus Transit, Inc.,
577 F.3d 467 (2nd Cir. 2009) …………………………………………………..…….11

National Nutritional Foods Ass'n v. Whelan,
492 F. Supp. 374 (S.D.N.Y. 1980) ……………………………………………...…14

New Amsterdam Cas. Co. v. Waller,
323 F.2d 20, 24 (2nd Cir. 1963) …………………………………………………15

New York State National Organization For Women
v. Terry, 159 F.3d 86 (2d Cir. 1998) …………………………………………15, 16

Okwedy v. City Of New York,
2006 WL 2374263 (2nd Cir. 2006) ……………………..……………………….15

Shrader v. CSX Transp., Inc., 70 F. 3d 255,
257 (2d Cir, 1995)……………………………………………………………..…4

Stichting Ter Behartiging v. S.E. Schreiber,
407 F.3d 24 (2nd Cir. 2005) ……………………………………….…….............15

**STATUTES:**

Section 747 of the Consolidated Appropriations
Act of 2010……………………………………………………1, 6, 10, 11, 13, 14, 15, 16,
18

28 U.S.C. 2201 ……………………………………………………………………6

Federal Rules of Civil Procedure
Rule 57 ……………………………………………………………………………6

Federal Rules of Civil Procedure
Rule 8…………………………………..…………………………………………14

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of plaintiffs Eagle Auto Mall Corp. ("Eagle") and Terry Chrysler Jeep, Inc. ("Terry") (collectively, the "Plaintiffs") in opposition to the motion of defendant Chrysler Group LLC ("Chrysler" or "Defendant") for reconsideration of that portion of the Court's December 23, 2011 Memorandum and Order that found a triable issue of fact as to whether the letters of intent of Defendant offered to Plaintiffs constituted "customary and usual" letters of intent.

## FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

The Plaintiffs received notice from Chrysler's bankrupt predecessor that their Chrysler dealership Sales and Service Agreements would be terminated as of June 9, 2009. Pursuant to Section 747 of the Consolidated Appropriations Act of 2010 (the "Act)") the Plaintiffs filed demands for arbitration with the American Arbitration Association to get their dealerships back. Simply stated, any dealer who should not have been shut down by Chrysler was given a chance, through arbitration, to unwind their wrongful termination. Hearings were held with respect to the Plaintiffs and, in each instance, the Plaintiffs won back their dealerships. Despite the clear purpose of the Act (i.e., the quick reinstatement of wrongfully terminated dealers), Chrysler has purposely frustrated the return of Plaintiffs' to the Chrysler dealer network by demanding that Plaintiffs execute a so-called "Letter of Intent" that does not satisfy the requirements of the Act (i.e., is not "customary and usual" as required by the Act). In particular, the letter is not an expression of Chrysler's intent to enter into a Sales and Service Agreement, but is instead a four page list of demands and conditions that Chrysler imposed on few, if any, of its dealers. The mandated process in these so-called letter begins with Plaintiffs applying to become a dealer, then proposing a dealership facility design which Chrysler could reject at its discretion, granting Chrysler an option to purchase the facility, and waiving important rights to protest Chrysler's decision to add a dealer in Plaintiffs' respective markets. This so-called "Letter of Intent" is nothing but a "road block"

created by Chrysler in order to frustrate the intent of the Act and avoid the obligation to restore Plaintiffs to the Defendant's dealer network.

In light of Chrysler's actions, Plaintiffs brought this suit. A copy of the Complaint is attached as Exhibit A to the Blatt Declaration. By "So Ordered" Stipulation, Plaintiffs agreed to withdraw the Second, Fourth and Fifth Claims for Relief originally asserted in their Complaint. Plaintiffs' First Claim for Relief alleged that each of the Plaintiffs is entitled to an order of this Court (a) confirming their individual respective arbitration award, and (b) reinstating Plaintiffs to the Chrysler dealer network upon the same terms and conditions that existed prior to Old Chrysler bankruptcy proceeding. See Blatt Declaration, Exhibit A at paragraphs 58-70).

Through its Third Claim for Relief, Plaintiffs are seeking a declaration from the Court that Chrysler violated the Act by (a) failing to issue to Plaintiffs "a customary and usual letter of intent to enter into a sales and service agreement" as required by the Act and (b) by conditioning the Plaintiffs' reinstatement to Chrysler's dealer network. See Blatt Declaration, Exhibit A at Paragraphs 85, 86 and 89.

After the close of discovery, the parties filed motions for summary judgment. Specifically, Plaintiffs sought summary judgment with respect to its First Claim for Relief (i.e., asking the Court confirm their individual respective arbitration award, and (b) reinstate Plaintiffs to the Chrysler dealer network upon the same terms and conditions that existed prior to Old Chrysler bankruptcy proceeding) and that portion of its Third Claim for Relief in which it sought a declaration from the Court that Chrysler violated the Act by conditioning Plaintiffs' reinstatement to Chrysler's dealer network. While the Court denied Plaintiffs' motion for summary judgment, it found a triable issue of fact as to whether the letters of intent that Defendant offered to Plaintiffs constituted its "customary and usual" letters of intent (i.e., that portion of Plaintiffs' Third Claim for Relief that was not addressed by the parties in the summary judgment motions – See Blatt Declaration, Exhibit A at paragraphs 85, 86 and 89).

Neither of the parties' summary judgment motions substantively addressed the issue of fact ultimately found by the Court in its Memorandum and Order to require a trial (i.e., "[t]he Court limits the trial in this matter to the issue of whether the Plaintiffs were offered the customary and usual letter of intent to enter franchise agreements . . ." Memorandum and Order at pages 12-13). The Court acknowledged this fact in the Memorandum and Order when it expressly provided that "[p]resently before the Court are the parties' cross motions for summary judgment . . . At issue are the questions whether the court has the jurisdiction to confirm the Plaintiffs' arbitration awards, and whether the decisions of the arbitrators entitled Plaintiffs to be reinstated under the same terms as provided by their pre-bankruptcy dealership agreements with Old Chrysler." Memorandum and Order at page 6.

Against the above stated backdrop, Defendant's pending motion seeks reconsideration of that portion of the Court's December 23, 2011 Memorandum and Order that found a triable issue of fact as to whether the letters of intent that Defendant offered to Plaintiffs constituted "customary and usual" letters of intent. It is respectfully submitted that Chrysler's motivation for filing its pending motion is clear. Having failed in its cross-motion for summary judgment to substantially address (or submit any evidence concerning) the factual issue as to whether the Plaintiffs were offered a customary and usual letter of intent, it seeks a **second and third** "bite at the apple," by (a) moving for reconsideration of the Court's December 23, 2011 Memorandum and Order (and somehow blaming Plaintiffs for having failed, or purposefully deciding not, to address (or submit any evidence concerning) the factual issue as to whether the Plaintiffs were offered a customary and usual letter of intent) or, in the alternative, (b) requesting permission to file a second summary judgment motion.

The gist of Defendant's motion is that (a) Plaintiffs somehow waived or conceded that the issues remaining in this litigation were legal in nature and could be resolved as a matter of law and (b) permitting a trial concerning the factual issue found by the Court (i.e., whether the letters of

intent that Defendant offered to Plaintiffs constituted its "customary and usual" letters of intent)
would somehow be manifestly unfair to Defendant because Plaintiffs, through the course of this
litigation, allegedly never identified the factual basis as to why the letters of intent that they
received from Chrysler were not "customary and usual." Defendant's motion, however, is
noticeable for its lack of candor and use of sharp litigation tactics. Specifically, as shown herein
below, its arguments are based on repeated mischaracterizations of the record. Indeed, (i) Plaintiffs
never conceded that the issue of whether the letters of intent that Defendant offered to Plaintiffs
constituted "customary and usual" letters of intent is legal in nature and could be resolved as a
matter of law and (ii) throughout this litigation - in their complaint, discovery responses,
correspondence to the Court and motion papers, Plaintiffs clearly and unambiguously (a) notified
Defendants that one of their claims was that Defendant violated the Act by failing to provide
Plaintiffs with a "customary and usual" letter of intent and (b) specifically, and repeatedly,
identified to Defendant the factual basis as to why the letters of intent that they received from
Chrysler were not "customary and usual." As such, Defendant's motion should be denied in its
entirety.

## RELEVANT LEGAL STANDARD

"[T]he standard for granting a motion for reconsideration is "strict." *Laina v. United Cerebal
Palsy of New York City, Inc.*, 2012 WL 28291 (E.D.N.Y. 2012); *citing, Shrader v. CSX Transp.,
Inc.*, 70 F.3d 255, 257 (2d Cir.1995). "[R]econsideration will generally be denied unless the moving
party can point to controlling decisions or data that the court overlooked—matters, in other words,
that might reasonably be expected to alter the conclusion reached by the court." *Id.* Reconsideration
is appropriate where movant demonstrates an "intervening change in controlling law, the
availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.,
citing In re Bear Stearns Companies, Inc.*, 2011 WL 4063685, *1–*2 (S.D.N.Y. Sept.13, 2011)

(internal citations omitted). *See also Dira Realty, LLC/CMP Improvements, Inc. v. Local 1031,* 2010 WL 5449851, *2–*3 (E.D.N.Y. Dec.28, 2010). Here, as shown below, Chrysler has failed to satisfy any of the elements needed to grant a motion for reconsideration and its motion should be denied in its entirety.

> A.   Plaintiffs Clearly And Unambiguously (A) Notified Defendant That One Of Their Claims Was That Defendant Violated The Act By Failing To Provide Plaintiffs With A "Customary And Usual" Letter Of Intent And (B) Specifically, And Repeatedly, Identified To Defendant The Factual Basis As To Why The Letters Of Intent That They Received From Chrysler Were Not "Customary And Usual."

Defendant's motion is based on the baseless premise that "[n]either Plaintiff's Complaint, nor their responses to discovery, nor their summary judgment papers have ever raised a factual issue as to whether and why the letters of intent they received were anything other than New Chrysler's 'customary and usual letter of intent'". Defendant's memorandum of law at page 1. As stated above, however, the parties' summary judgment motions did not concern or even substantively address this issue. As such, it was not incumbent upon Plaintiffs, in connection with those motions, to raise such a factual issue. Again, it was Defendant that failed, on its cross-motion for summary judgment, to substantively address (or submit any evidence concerning) the factual issue as to whether the Plaintiffs were offered a customary and usual letter of intent.

For their part, Plaintiffs, from the commencement of this litigation,  clearly and unambiguously provided Defendant with notice that one of their claims was that Defendant violated the Act by failing to provide Plaintiffs with a "customary and usual" letter of intent. Indeed, Plaintiffs' Complaint alleges that "Despite the fact that the purpose of the Act was to support, through the dealer reinstatement arbitrations, the reinstatement of automobile franchises that were terminated in Chrysler's bankruptcy reorganization, Chrysler has failed and refused to grant any of the Plaintiffs a "customary and usual letter of intent," as required by the Act." Blatt Declaration,

Exhibit A at paragraph 39. Indeed, Plaintiffs' Third Claim for Relief contained in their Complaint, further expressly and unambiguously alleged as follows:

" 84.     A real, actual and justiciable controversy has arisen between Chrysler and each of the Plaintiffs concerning the Letter of Intent provided by Chrysler to each of the Plaintiffs in connection with their successful dealer reinstatement arbitration under the Act.

85.     It is the Plaintiffs' position that Chrysler: (a) **Chrysler has failed and refused to issue to any of the Plaintiffs "a customary and usual letter of intent to enter into a sales and service agreement" as required by the Act** and (b) by conditioning each of the Plaintiffs' reinstatement to Chrysler's dealer network on the dealers' execution of Chrysler's unconscionable Letter of Intent, Chrysler is intentionally, knowingly and willfully violating the Act and thwarting the law.

86.      **It is undoubtedly Chrysler's contention that (a) it has issued to each of the Plaintiffs "a customary and usual letter of intent to enter into a sales and service agreement" as required by the Act** and (b) it has not violated the Consolidated Appropriations Act of 2010 (Public Law 111-117).

89.     **Pursuant to 28 U.S.C. 2201 and Federal Rules of Civil Procedure Rule 57, Plaintiffs are entitled to a declaratory judgment that (a) Chrysler has failed and refused to issue to any of the Plaintiffs "a customary and usual letter of intent to enter into a sales and service agreement" as required by the Act and** (b) by conditioning each of the Plaintiffs' reinstatement to Chrysler's dealer network on the dealers' execution of Chrysler's

6

unconscionable Letter of Intent, Chrysler is intentionally, knowingly and willfully violating the Act and thwarting the law.

In addition, there should also be no dispute that Plaintiffs have repeatedly, through every step of this litigation, identified to Defendant the factual basis as to why the letters of intent that they received from Chrysler were not "customary and usual." Indeed, Plaintiff's Complaint, discovery responses, correspondence and motion papers, as well as Plaintiff's portion of the proposed joint pre-trial order, all identify the factual basis as to why the letters of intent that they received from Chrysler were not "customary and usual." As just one example, Plaintiffs' Complaint alleges that:

> "45. While the Act does not define or set any parameters as to the meaning of "customary and usual letter of intent," Chrysler's Letter of Intent is neither customary or usual in each of the following ways: the Plaintiffs must waive certain rights that may be provided it under applicable state motor vehicle franchise statute such as protest rights that it may possess in the event that a new dealer is added in the Plaintiffs' market area; Chrysler will not provide Plaintiffs with any new Chrysler motor vehicles for sale to the general public unless and until Plaintiffs complete a facility renovation in a manner that has been solely prescribed by Chrysler; Plaintiffs must provide Chrysler with an option to lease or purchase the Plaintiff's dealership facility; and Chrysler's proposed Letter of Intent indicates that, prior to entering into a sales and service agreement with any of the Plaintiffs, Chrysler would "give notice to the state and/or dealers as may be required by state law," even though the Act preempts state law on the issue of such a challenge and affords no third party with any putative right to challenge the reinstatement of a prevailing dealer." Blatt Declaration, Exhibit A at paragraph 45.

Likewise, Plaintiffs' Interrogatory Responses (copies of which are attached as Exhibit B to the Blatt Declaration) unambiguously identify the factual basis as to why the letters that they

received from Chrysler were not "customary and usual." Indeed, in response to the Interrogatory in which Chrysler requests that Plaintiffs **state the basis for your allegation 40 of the Complaint that Chrysler Group has 'failed and refused' to issue you a "customary and usual letter of intent to enter into a sales and service agreement,"** Plaintiffs included in its response that "Plaintiff states that Chrysler Group has failed and refused to issue to Plaintiffs a customary and usual letter of intent to enter into a sales and service agreement because, among other things:

- To the extent any assumed dealer [i.e., those approximately 1800 dealers whose sales and service agreements were assigned to Chrysler] was or is required to make any facility renovations, such dealers were or are permitted to continue to sell new Chrysler vehicles and complete such required renovations over an agreed upon period of time;

- To the extent that Chrysler "backfilled" Chrysler, Jeep or Dodge line makes formerly belonging to those dealers who Sales and Services Agreements were rejected in Old Chrysler's Bankruptcy Proceedings, and to the extent such dealer was or is required to make any facility renovations, such dealers were or are permitted to continue to sell new Chrysler vehicles and complete such required renovations over an agreed upon period of time; See Blatt Declaration, Exhibit B.[1]

In the same vein, in motion practice before the Court, Plaintiffs sought to compel Defendant to produce documents that would elicit information concerning numerous specific allegations

---

[1] Ironically, even prior to the commencement of the within litigation, Plaintiffs provided notice to Chrysler of the provisions in the letters of intent that they received from Defendant that are now claimed to violate the Act because they are not "customary and usual." Attached as Exhibit C is a letters forwarded to Chrysler on behalf of Plaintiffs identifying these provisions contained in Chrysler's letters of intent that Plaintiffs claim are objectionable because they are not "customary and usual".

contained in both Plaintiffs' Complaint and Chrysler's Counterclaim. In correspondence to the Court (a copy of which is attached as Exhibit D to the Blatt Declaration), the Plaintiffs yet again identified specific ways in which Chrysler's letter of intent was not "customary and usual."

Likewise, the Plaintiff's portion of the proposed pre-trial order further expressly identifies the factual basis as to why the letters of intent that they received from Chrysler were not "customary and usual" by alleging that (a) Chrysler's Letter of Intent is neither customary or usual in that Plaintiffs must waive certain rights that may be provided it under applicable state motor vehicle franchise law such as protest rights that it may possess in the event that a new dealer is added in the Plaintiffs' market area; (b) Chrysler's Letter of Intent is neither customary or usual in that Chrysler will not provide Plaintiffs with any new Chrysler motor vehicles for sale to the general public unless and until Plaintiffs complete a facility renovation in a manner that has been solely prescribed by Chrysler; (c) Chrysler's Letter of Intent is neither customary or usual in that Plaintiffs must provide Chrysler with an option to lease or purchase the Plaintiff's dealership facility; (d) Chrysler's Letter of Intent is neither customary or usual in that it indicates that, prior to entering into a sales and service agreement with any of the Plaintiffs, Chrysler would "give notice to the state and/or dealers as may be required by state law," even though the Act preempts state law on the issue of such a challenge and affords no third party with any putative right to challenge the reinstatement of a prevailing dealer; and (e) Chrysler's Letter of Intent is neither customary or usual in that, to the extent that Chrysler "backfilled" Chrysler, Jeep or Dodge line makes formerly belonging to those dealers whose Sales and Services Agreements were rejected in Old Chrysler's Bankruptcy Proceedings, and to the extent such dealer was or is required to make any facility renovations, such dealers were or are permitted to continue to sell new Chrysler vehicles and complete such required renovations over an agreed upon period of time. See Proposed Pre-Trial Order attached as Exhibit E to the Blatt Declaration.

In incredulous fashion, Defendant contends that that "Plaintiffs' consistent position has been that the letters of intent New Chrysler offered to them did not satisfy Section 747 because they did not effectuate Plaintiffs' unconditional 'reinstatement' or replicate the terms of Plaintiffs' rejected franchise agreements with Old Chrysler. Plaintiffs asserted the existence of a factual issue for the first time in their response brief in a last-ditch effort to preserve their complaint from dismissal." Defendant's Memorandum of Law at page 1. In the same fashion, Defendant asserts that "[f]rom the outset of this litigation, Plaintiffs' theory has been that they are entitled under Section 747 to immediate "reinstatement" to the New Chrysler dealer network on the same terms and conditions that existed under their rejected franchise agreements with Old Chrysler, and without regard to whether they could satisfy the conditions set forth in a customary and usual letter of intent." Defendant's Memorandum of Law at page 7.

Plaintiffs do not deny that, one of their claims in this litigation was that Chrysler violated the Act because they failed to effectuate Plaintiffs' unconditional 'reinstatement' or replicate the terms of Plaintiffs' rejected franchise agreements. Indeed, this issue was specifically raised by the parties and addressed by the Court in the summary judgment motions. However, Defendant requests that the Court determine the pending motion in a vacuum and all but ignore both (a) that portion of Plaintiffs' Third Claim For Relief, in which Plaintiffs seek a declaration from the Court that Chrysler violated the Act by failing and refused to issue to any of the Plaintiffs "a customary and usual letter of intent to enter into a sales and service agreement" as required by the Act and over nineteen (19) months of litigation in which Plaintiffs, as shown above, repeatedly identified the factual basis as to why the letters of intent that they received from Chrysler were not "customary and usual." As such, Defendant's motion should be denied in its entirety.

### B. Plaintiffs Never Conceded That The Issue Of Whether The Letters Of Intent That Defendant Offered To Plaintiffs Constituted "Customary And Usual" Letters Of Intent Is Legal In Nature And Could Be Resolved As A Matter Of Law

Defendant contends that Plaintiffs somehow **conceded** that the issue of whether the letters of intent that Defendant offered to Plaintiffs constituted "customary and usual" letters of intent is legal in nature and could be resolved as a matter of law. In this respect, Defendant is seemingly arguing that there was some type of judicial admission made by Plaintiffs that are binding upon them. Judicial admissions that bind a party throughout any litigation are generally facts set forth pleadings. *National Labor Relations Board v. Consolidated Bus Transit, Inc.*, 577 F.3d 467 (2nd Cir. 2009); *citing; Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2nd Cir. 2006). As shown herein above, Plaintiffs' Complaint clearly and unambiguously provided Defendant with notice that one of their claims was that Defendant violated the Act by failing to provide Plaintiffs with a "customary and usual" letter of intent.

In support of its motion, Defendant cites to various discovery responses, correspondence and even Plaintiffs' portion of the Joint Pre-Trial Order. This argument, however, is baseless. Defendant first cites to Response # 6 contained in Plaintiffs' Interrogatory Responses and argues that the Plaintiffs solely [relied] on their legal argument that Section 747 was intended to provide for unconditional "reinstatement." Defendant's Memorandum of Law at page 9. Respectfully, to state that Defendant has mischaracterized Plaintiffs' Interrogatory Responses would probably be an understatement. Plaintiffs cite to these Interrogatory Responses herein above and will not again list verbatim the response, however, while the Response begins with a legal objection, it proceeds to provide that "Subject to and without waiving its objections, Plaintiff states that Chrysler Group has failed and refused to issue to Plaintiffs a customary and usual letter of intent to enter into a sales and service agreement, because, among other things. . . . " Plaintiffs then proceed to list approximately fourteen (14) separate reasons why they contend that Chrysler Group has failed and refused to issue

11

to Plaintiffs a customary and usual letter of intent to enter into a sales and service agreement. Although quite a number of these reasons concerned that portion of Plaintiffs' Third Claim for Relief that alleged that Defendant violated the Act by failing and refusing to unconditionally reinstate Plaintiffs, others clearly relate to Plaintiffs' claim that Chrysler violated the Act by refusing to issue to Plaintiffs a customary and usual letter of intent. See Blatt Declaration, Exhibit B.[2]

Defendant also seeks to rely upon counsel's June 4, 2011 letter (attached as Exhibit C to the Declaration of Emily Meyers in Support of Defendant's Motion and also attached as Exhibit F to the Blatt Declaration). Defendant contends that it again asked Plaintiffs to identify any factual issues relating to the claim that the letters of intent were not "customary and usual" and Plaintiffs "gave no response except to repeat their legal argument that the letters of intent imposed conditions that had not appeared in Plaintiff's rejected franchise agreements with Old Chrysler." Defendant's Memorandum of Law at page 9. Again, a simple review of counsel's correspondence reveals that this is a gross distortion of this letter. While page 2 of this letter certainly raised the legal argument cited above by Chrysler, Defendant conspicuously has failed to reference the third and fourth pages of this letter which expressly identify the factual basis as to why the letters of intent that they received from Chrysler were not "customary and usual." See Blatt Declaration, Exhibit F. Likewise, counsel's June 8, 2011 (attached as Exhibit G to the Blatt Declaration), strangely relied upon by

---

[2] In addition, as shown herein below, there is no reason that Plaintiffs cannot argue that certain terms contained in the letters of intent are objectionable, and violate the Act, because they (a) are not part of a customary and usual Chrysler letter of intent **and** (b) they were not contained in the sales and service agreements that Plaintiffs had with "Old" Chrysler and therefore, Plaintiffs were not being unconditionally reinstated to the Chrysler dealer network upon the same terms and conditions that existed prior to Old Chrysler bankruptcy proceeding.

Chrysler, again identified the factual basis as to why the letters of intent that they received from Chrysler were not "customary and usual."

Defendant also contends that Plaintiffs conceded that all issues remaining in this case "following the stipulated dismissal of three of the five counts in the Complaint" were legal in nature and could be resolved as a matter of law. This is false. The Stipulation does not state that all issues remaining in this case are legal in nature." Indeed, the Stipulation, a copy of which is attached as Exhibit H to the Blatt Declaration, clearly provides that "Nothing contained in this stipulation, nor the parties' actions pursuant to this stipulation, shall prejudice, compromise, restrict, limit, impede, inhibit or have any effect or consequence whatsoever upon the parties' prosecution and defense of the First and Third Claims for Relief that have been asserted in Plaintiffs' Complaint and Defendant Chrysler Group LLC's Answer and Counterclaim and Request for Relief, all of which survive the dismissal with prejudice of the Second, Fourth and Fifth Claims for Relief."

Yet a further contention of Defendant is that Plaintiffs should somehow be precluded from arguing that (a) certain terms contained in the letters of intent provided to them by Chrysler are objectionable and demonstrate that such letters of intent are not "customary and usual," and (b) the same terms contained in these letters of intent, as a matter of law, violated Section 747 because they differed from the terms of Plaintiffs' rejected franchise agreements and did not effectuate Plaintiffs' unconditional "reinstatement" or replicate the terms of Plaintiffs' rejected franchise agreements with Old Chrysler. See Defendant's Memorandum of Law at pages 7-8. Based upon this unsupported argument, Defendant repeatedly points to language contained in Plaintiffs' discovery responses, correspondence to the Court, motion papers and even Plaintiffs' portion of the parties' proposed Joint Pre-Trial Order to argue that Plaintiffs have somehow conceded or admitted that the issue of whether the letters of intent that Defendant offered to Plaintiffs constituted "customary and

usual" letters of intent is legal in nature and could be resolved as a matter of law. Defendant's
Memorandum of Law at pages 9

Despite Defendant's unsupported argument to the contrary, there is, of course, no legal or
procedural prohibition stopping Plaintiffs from utilizing the same allegations (i.e., the same
provisions in the letters of intent that have been repeatedly identified by Plaintiffs) in support of
both their (a) claim that the letters of intent violated the Act because certain of their terms differed
from the terms of Plaintiffs' rejected franchise agreements and did not effectuate Plaintiffs'
unconditional 'reinstatement' or replicate the terms of Plaintiffs' rejected franchise agreements with
Old Chrysler (which the Court did reject in its December 23, 2011 Memorandum and Order and (b)
claim that Chrysler violated the Act because the letter of intent provided to Plaintiffs is not
Chrysler's "customary and usual" letter of intent (concerning which the Court, in its December 23,
2011 Memorandum and Order, found that a triable issue of fact exists).

Indeed, it is hornbook and well settled law that Plaintiff is, of course, permitted to plead in
the alternative, regardless of the consistency of the allegations. *See, National Nutritional Foods
Ass'n v Whelan,* 492 F.Supp. 374 (S.D.N.Y. 1980). In fact, the Federal Rules of Civil Procedure
expressly permit the pleading of both alternative and inconsistent claims and allegations. Indeed,
pursuant to Federal Rule 8, a party is permitted to set forth inconsistent statements either
alternatively or hypothetically within a single count or defense, or in separate claims or defenses. In
fact, under Federal Rule 8 "[a] party may set out 2 or more statements of a claim or defense
alternatively or hypothetically, either in a single count or defense or in separate ones." Again, here,
under Rule 8, Plaintiffs are permitted to allege, as they have done, that (a) certain terms contained in
the letters of intent provided to them by Chrysler are objectionable and demonstrate that such letters
of intent are not "customary and usual," and (b) the same terms in these letters of intent, as a matter
of law, violated Section 747 because they differed from the terms of Plaintiffs' rejected franchise

agreements and did not effectuate Plaintiffs' unconditional 'reinstatement' or replicate the terms of Plaintiffs' rejected franchise agreements with Old Chrysler.

Furthermore, under Rule 8 "[a]" party may state as many separate claims or defenses as it has, regardless of consistency" and "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." As such, even though this Court rejected, as it did in its December 23, 2011 Memorandum and Order, that the terms contained in the letters of intent provided to Plaintiffs did not violate Section 747 because they differed from the terms of Plaintiffs' rejected franchise agreements and did not effectuate Plaintiffs' unconditional 'reinstatement' or replicate the terms of Plaintiffs' rejected franchise agreements, Plaintiffs are still permitted to rely upon the same allegations to argue that the letters of intent provided to them by Chrysler are not "customary and usual."

In sum, the law is also clear that "[j]udicial admissions are statements of fact rather than legal arguments made to a court." *Ancile Investment Company Limited v. Archer Daniels Midland Company*, 2011 WL 3516128 (S.D.N.Y. 2011); *citing; New York State National Organization For Women v. Terry*, 159 F.3d 86 (2nd Cir. 1998). *See, Okwedy v. City of New York*, 2006 WL 2374263 (2nd Cir. 2006) (Statements made by city's attorney during trial were legal theories, rather than facts, and, as such, could not constitute binding judicial admissions attributable to the city); *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (2nd Cir. 1963) ("The doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case. When counsel speaks of legal principles, as he conceives them and which he thinks applicable, he makes no judicial admission and sets up no estoppel which would prevent the court from applying to the facts disclosed by the proof, the proper legal principles as the Court understands them); *Stichting Ter Behartiging v. S.E. Schreiber*, 407 F.3d 24 (2nd Cir. 2005) (Party's statement in Rule 56.1 statement in support of summary judgment motion was not judicial

admission as judicial admissions are "statements of fact rather than legal arguments made to a court."); *New York State National Organization For Women v. Terry,* 159 F.3d 86 (2nd Cir. 1998) ("Plaintiffs' statements of their theory of the case do not constitute judicial admissions.")

In this respect, and as stated above, Plaintiffs do not deny that one of their contentions or legal arguments in this litigation, which has been repeatedly expressed in their discovery responses, correspondence to the Court, motion papers and even Plaintiffs' portion of the parties' proposed Joint Pre-Trial Order, is that, as a matter of law, the letters of intent provided to Plaintiffs violated Section 747 because they differed from the terms of Plaintiffs' rejected franchise agreements and did not effectuate Plaintiffs' unconditional 'reinstatement' or replicate the terms of Plaintiffs' rejected franchise agreements (which the Court has rejected in its Memorandum and Order). It is respectfully submitted, however, that taking this position (*i.e.*, submitting this legal argument or legal theory) in no way, shape or form precludes Plaintiffs from also arguing (even based upon the same allegations concerning Chrysler's letters of intent) that the letters of intent provided to Plaintiffs by Chrysler are not "customary and usual."

## C. Defendant Should Not Be Granted Permission to File, Yet Another, Summary Judgment Motion

Defendant has requested, in the alternative, that it be granted permission to file yet another summary judgment motion. In this manner, Defendant is seeking yet a third "bite at the apple." (the pending motion being Defendant's second "bite at the apple.") It is respectfully submitted that this would be futile. At a minimum, there is a genuine issue of material fact as to "whether the Plaintiffs were offered the customary and usual letter of intent to enter franchise agreements . . ." Memorandum and Order at pages 12-13.

The very documents cherry-picked to produce by Defendant to Plaintiff demonstrate that there is a wide disparity between the letters of intent Plaintiffs received and letters of intent

provided to other dealers. This does not even account for the documents that Chrysler has seemingly withheld from Plaintiffs. For example, a dealer in Georgia who had been terminated was brought back into the Chrysler dealer network pursuant to a side deal with Chrysler that waived three of the most burdensome elements of the so-called "letter of intent": (a) the requirement for an exclusive Chrysler Dodge Jeep facility, (b) the requirement to construct a costly architectural "arch" to the facility, and (c) the requirement to give Chrysler an option to purchase the facility. This deal was reflected in a cover letter that accompanied the dealer's "letter of intent" and an email (which email Chrysler did not produce to Plaintiffs). See documents attached to the Blatt Declaration as Exhibit I.

As a further example, unlike the letters of intent received by Plaintiffs (Blatt Declaration Exhibit J) in which Chrysler would not provide Plaintiffs with any new Chrysler motor vehicles for sale to the general public unless and until Plaintiffs complete a facility renovation in a manner that has been solely prescribed by Chrysler, Chrysler provided certain dealers with letters of intent (See Blatt Declaration Exhibit K) which permitted them to sell vehicles **prior to** the construction or renovation of a facility meeting Chrysler's standards. Additionally, attached hereto as Exhibit L, are just a small sample of the letters of intent in which other post bankruptcy "New" Chrysler dealers were not required to provide Chrysler with an option to lease or purchase the dealership facility, as was the case with respect to the letters of intent issued to the Plaintiffs (See Exhibit L – paragraph 8h of each letter).

Simply stated, based upon these documents, it is unfathomable how Chrysler can contend that the Court's decision to "limit[] the trial in this matter to the issue of whether the Plaintiffs were offered the customary and usual letter of intent to enter franchise agreements," could in any way merit reconsideration. It is respectfully submitted that Chrysler's own documents are damning to Chrysler's current application and demonstrate its frivolousness.

**D. It Would Be Manifestly Unjust To Plaintiffs If Either Defendant's Motion For Reconsideration Was Granted Or Chrysler Was Granted Permission To File Yet Another Summary Judgment Motion**

Incredibly, Defendant argues that "[r]econsideration is also appropriate here to prevent the injustice that would occur if Plaintiffs were permitted to alter their theory of the case at the eleventh hour, without notice to New Chrysler." Defendant's Memorandum of Law at page 15. In this respect, Defendant falsely claims that it has been Plaintiffs' **sole** position "that the letters of intent New Chrysler offered to them did not satisfy Section 747 because they did not effectuate Plaintiffs' unconditional 'reinstatement' or replicate the terms of Plaintiffs' rejected franchise agreements with Old Chrysler." Defendant's Memorandum of Law at pages 1 and 7.

While Plaintiffs certainly took this position, and moved for summary judgment with respect to this issue, it is a complete distortion of Plaintiffs' claims for Defendant to argue that this has been Plaintiffs' sole contention in this case. As demonstrated herein in substantial detail, Plaintiffs' complaint, discovery responses, correspondence to the Court, as well as their portion of the proposed pre-trial order, all clearly identify the factual basis as to why the letters of intent that they received from Chrysler were not "customary and usual." Stated otherwise, Plaintiffs (a) absolutely provided Defendant with notice that one of their claims was that Defendant violated the Act by failing to provide Plaintiffs with a "customary and usual" letter of intent and (b) repeatedly and sufficiently identified, through every step of this litigation, the factual basis as to why the letters of intent that they received from Chrysler were not "customary and usual." As such, any contention by Defendant that Plaintiffs are somehow altering their theory of the case at the "eleventh hour" is simply not accurate and belied by the Plaintiffs' complaint, discovery responses, letters to the Court, motion papers and their portion of the proposed joint pre-trial order. Stated otherwise, Defendant, in connection with its pending motion, has repeatedly mischaracterized and distorted Plaintiffs' pleadings, discovery responses, motion papers, and correspondence in order to support its

contentions and, in many instances, completely ignores the express and unambiguous text of these documents.

Despite Defendant's arguments to the contrary, it would be Plaintiffs that would be severely prejudiced by any further delay of the trial of this action. Again, having failed, on its cross-motion for summary judgment, to substantially address (or submit any evidence concerning) the factual issue as to whether the Plaintiffs were offered a customary and usual letter of intent, the within motion for reconsideration (and alternative request by Defendant for permission to file yet another summary judgment motion) certainly has the effect of further prolonging this case to the severe prejudice of the Plaintiffs. Simply stated, any delay in the ultimate resolution of the case will only serve, as Chrysler surely intends, to prejudice Plaintiffs by further frustrating and delaying their opportunity to regain their franchises.

Indeed, it has been Plaintiffs' position from the commencement of this case that Chrysler's Letter of Intent was drafted solely to defeat the remedies that the Act provided to Plaintiffs and the prolonging of this litigation enhances Chrysler's improper and illegal goals. Specifically, Plaintiffs are losing sales and service profits every single additional day that they are precluded from selling and servicing Chrysler and Jeep vehicles. Chrysler is attempting to "starve" and outlast the dealers that won their reinstatement arbitrations. Chrysler surely figures that the longer it can delay or thwart the return of Plaintiffs' to the Chrysler dealer network, the better chance it has that Plaintiffs will no longer be able to both prosecute the within action or afford to carry the facilities and properties formerly utilized as Plaintiffs' Chrysler dealership facilities.  Chrysler has now frustrated Plaintiffs' return to the Defendant's dealer network and continuation of Plaintiffs' automobile franchises as required by the Act for 18 months and, respectfully, the expedient resolution of this action is imperative.  For the foregoing reasons, it is respectfully requested that Chrysler's motion for reconsideration be denied in its entirety.

## CONCLUSION

For the all foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's motion in its entirety.

Dated: Mineola, New York
February 16 , 2012

BLATT GENTILE & ASSOCIATES, LLP

BY:  Steven Blatt, Esq. (SB 6792)
Attorneys for Plaintiffs
200 Old Country Road
Suite 400
Mineola, NY 11501
(516) 873-3000