UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EAGLE AUTO MALL CORP., and )
TERRY CHRYSLER JEEP, INC., )
                                                 )
      Plaintiffs                    )
                                                 ) Case No. 2:10-cv-03876
v.                                             )
                                                 ) (LDW) (ETB)
CHRYSLER GROUP LLC,          )
                                                 )
      Defendant.                 )
                                                 )

**PLAINTIFFS' RESPONSE TO CHRYSLER GROUP LLC'S
STATEMENT OF UNDISPUTED MATERIAL FACTS**

## Old Chrysler's Bankruptcy And Asset Sales

1. On April 30, 2009, Chrysler LLC and certain of its subsidiaries and affiliates ("Old Chrysler") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, with the Bankruptcy Court's approval, Old Chrysler sold substantially all of its assets to an entity that became New Chrysler.

**RESPONSE:** Admitted.

2. In connection with the sale of its assets, Old Chrysler sought to transfer approximately 2,400 of its dealerships to New Chrysler, and to reject its dealership agreements with the remaining 789. In June of 2009, the Bankruptcy Court approved Old Chrysler's request to reject its contracts with the 789 non-assumed dealerships, and the asset sale to New Chrysler went forward as planned.

**RESPONSE:** Admitted.

3. Plaintiffs Eagle Auto Mall Corp. ("Eagle") and Terry Chrysler Jeep, Inc. ("Terry") are two of the 789 dealerships whose franchise agreements were rejected as part of the asset sale.

**RESPONSE:** Admitted.

4. In December 2009, Congress enacted Section 747 as a rider to the Consolidated Appropriations Act of 2010, Pub.L.No. 111-117.

**RESPONSE:** Admitted.

5. Section 747 gave Old Chrysler dealers whose franchise agreements had been rejected by the Bankruptcy Court ("Rejected Dealers") the right to seek through arbitration to be added to the New Chrysler dealer network.

2

**RESPONSE:** Admitted.

6. This Court has held that under Section 747, a Rejected Dealer that prevails in arbitration is not automatically "restored" to the dealership network, but is entitled to be awarded a "customary and usual letter of intent to enter into a sales and service agreement." The Court further held that a customary and usual letter of intent "is the sole remedy provided for in [Section 747]."

**RESPONSE:** Admitted.

7. From March to July, 2010, New Chrysler participated in more than 100 arbitration hearings with Rejected Dealers under Section 747, including Eagle and Terry.

**RESPONSE:** Admitted.

8. Eagle and Terry obtained favorable decisions from the arbitrators in their respective Section 747 proceedings.

**RESPONSE:** Admitted.

9. Following their arbitration decisions, New Chrysler sent separate letters to Eagle and Terry enclosing New Chrysler's customary and usual letter of intent in compliance with Section 747.

**RESPONSE:** Plaintiffs admit Chrysler sent them letters. Plaintiffs dispute those letters were "customary and usual letter[s] of intent in compliance with Section 747." *See* the accompanying Declaration of Allen P. Press ("Press Declaration").

3

10. Instead of executing the letters of intent offered by New Chrysler, Plaintiffs initiated this lawsuit.

**RESPONSE:** Admitted.

11. On June 29, 2011, this Court entered an Order approving the parties' Stipulation of Dismissal, which dismissed with prejudice the Second, Fourth, and Fifth Claims for Relief in Plaintiffs' Complaint.

**RESPONSE:** Admitted.

12. On December 23, 2011, this Court entered an Order on the parties' cross-motions for summary judgment on the First and Third Claims in Plaintiffs' Complaint. The Court held that Section 747 does not "entitle[] Rejected Dealers] to be reinstated as Chrysler dealers under the same terms and conditions that governed their business relationship with now-bankrupt Old Chrysler." Rather, the Court held that "the sole remedy provided for in [Section 747]" is the issuance of a "customary and usual letter of intent to enter into a sales and service agreement."

**RESPONSE:** Admitted.

13. The Court held that "the remedy of providing the dealer with 'a customary and usual letter of intent to enter into a franchise agreement,' § 747(e), refers to terms being offered in the post-bankruptcy incarnations of both Chrysler and GM, companies operating in the present, rather than prior to 2009." The Court further held that "Plaintiffs are now foreclosed in this action from arguing that the statutorily required letter of intent must express the terms of their pre-bankruptcy status."

4

**RESPONSE:** Admitted.

14. The Court identified "an open question as to whether the letters of intent offered to the Plaintiffs constitute the customary and usual letters of intent offered to all potential franchises at the time of the offering," which had not been addressed in the parties' motions and supporting materials, and otherwise granted New Chrysler's motion for summary judgment and denied Plaintiffs' motion.

**RESPONSE:** Admitted.

15. New Chrysler moved for reconsideration of that portion of the Court's December 23, 2011 decision that found an open question whether the letters of intent that New Chrysler offered to Eagle and Terry were "customary and usual." The Court denied that motion. In doing so, the Court reiterated that Section 747 required New Chrysler to offer letters of intent "under terms that were usual and customary at the time of the offer, and not those governing Plaintiffs' pre-bankruptcy dealership agreements."

**RESPONSE:** Admitted.

16. On April 9, 2012, the district court granted summary judgment to New Chrysler in *Los Feliz Ford, Inc. v. Chrysler Group, LLC*, No. 2:10-cv-06077 (GAF) (MAN) (C.D. Cal. April 9, 2012) (Dkt. 97) ("*Los Feliz*").

**RESPONSE:** Admitted.

17. In that case, Los Feliz Ford, Inc. dba Star Chrysler Jeep ("Los Feliz"), a Rejected Dealer that had obtained a favorable decision in Section 747 arbitration,

sued New Chrysler, alleging among other things that the letter of intent New Chrysler offered to it was not "customary and usual" as required by Section 747.

**RESPONSE:** Admitted.

18. Among other provisions, Los Feliz challenged provisions of the LOI that vested New Chrysler with discretion to terminate the LOI should an existing dealer protest Los Feliz's proposed establishment (¶ 5 of the LOI); required Los Feliz to complete a facility renovation in accordance with the LOI (¶¶ 6, 8 of the LOI); and required Los Feliz to waive its right to protest the establishment of other dealers for a period of five years (¶ 13 of the LOI).

**RESPONSE:** Admitted.

19. In *Los Feliz*, New Chrysler produced in discovery, among other things, LOIs that New Chrysler issued to new dealer candidates since its inception, including to Rejected Dealers. It also submitted a declaration by John D. Tangeman, New Chrysler's Head of International Network Development and Market Representation, who averred that the LOI New Chrysler had issued to Los Feliz contained provisions "'found in the vast majority'" of other LOIs.

**RESPONSE:** Plaintiffs admit Chrysler submitted a declaration from John Tangeman in the *Los Feliz* case as set forth in the second sentence of this paragraph. Plaintiffs dispute that Chrysler produced in the *Los Feliz* case all the documents that reflect its intent to enter into sales and service agreements with its dealers, as it failed to do so in this case. *See* Press Declaration, ¶s 1, 13, 14.

20. The Declaration of John D. Tangeman submitted in *Los Feliz* described the results of an analysis performed by New Chrysler in which New Chrysler

6

compared the challenged provisions in the LOI it issued to Los Feliz against other LOIs. That analysis showed that the challenged provisions were "contained in anywhere from 75% to 100% of New Chrysler's letters." In particular, provisions substantially identical to paragraph 6 of the Los Feliz LOI appeared in 90%-96% of all LOIs; and provisions substantially identical to paragraph 8, 11, 13, and 19 appeared in 89%, 100%, 75% and 100% of the LOIs respectively.

**RESPONSE:** Plaintiffs admit Chrysler reported the statistics set forth in this paragraph. Plaintiffs dispute the validity of those statistics in the context of this case. *See* Press Declaration, ¶s 7 - 15.

21. The court held the LOI that New Chrysler issued to Los Feliz to be customary and usual. The court adopted the Court's earlier ruling that "'a customary and usual letter of intent' under Section 747(e) refers to letters issued by the post-bankruptcy incarnation of Chrysler." Whereas Los Feliz had sought "the 'same terms and conditions that existed prior to Old Chrysler's bankruptcy,'" the court held that "[r]equiring manufacturers to look to all historical and industry-wide practice" would be "too onerous a standard and would leave the inquiry open-ended and indeterminate." The court held that Section 747 does not impose a standard of "fair[ness] and reasonable[ness] that would require arbitrators and courts to "micro-manage the business relations between New Chrysler" and its dealers. Instead, the court held that determining whether a LOI was customary and usual required "compar[ing] that letter to other letters of intent offered by New Chrysler." Such a standard, the court held, would "ensure[] that [New Chrysler]

7

issues a letter of intent complying with the underlying purpose of Section 747, without dictating the precise terms that must be offered."

**RESPONSE:**     Admitted.

22.     Applying that standard, the court held that "no reasonable jury could concluded that the [LOI] offered to [Los Feliz] was not 'customary and usual.'"

**RESPONSE:**     Admitted.

23.     Based on New Chrysler's analysis comparing the provisions of the LOI that it had issued to Los Feliz against the provisions of other LOIs, the court found that provisions "'substantially identical'" to the provisions challenged by Los Feliz appeared in the "vast majority"–*i.e.*, between 75% and 100%–of the other LOIs.

**RESPONSE:**     Admitted.

24.     The court further noted that paragraph 5 of the LOI, which Los Feliz had also challenged, had been amended in August 2010 and was no longer part of Los Feliz's LOI.

**RESPONSE:**     Admitted.

25.     The *Los Feliz* court accordingly held the LOI that New Chrysler offered to Los Feliz to be "customary and usual" as a matter of law.

**RESPONSE:**     The court did not find the letters was "'customary and usual' as a matter of law." The court found there was no triable issue in that case, and that Chrysler was entitled to "judgment" as a matter of law.

8

26. Los Feliz filed a motion to set aside, amend, or supplement the record on which the court decided the parties' motions for summary judgment in *Los Feliz*. On May 15, 2012, the court denied that motion. In doing so, the Court held that the Declaration of John D. Tangaman, which New Chrysler had submitted in support of its motion for summary judgment, was admissible because it was based on Tangeman's personal knowledge and used a "'summary, chart, or calculation to prove the content of voluminous [evidence]'"–the LOIs–that had been made available to Los Feliz, as permitted by Federal Rule of Evidence 1006.

**RESPONSE:** Admitted.

### The Customary And Usual LOIs New Chrysler Offered to Eagle and Terry

27. Since its inception, New Chrysler has issued numerous LOIs to dealer candidates that New Chrysler has added to its dealer network in the ordinary course of business.

**RESPONSE:** Plaintiffs dispute these facts. Chrysler has approximately 2,500 dealers. Almost all of them were added without a conditional "letter of intent." Chrysler produced only 135 documents called "letter of intent" that conditionally offered franchises to dealers. *See* Press Declaration, ¶s 1 - 3.

28. New Chrysler uses a computer template as a starting point to generate LOIs that it issues to dealer candidates to establish new franchises.

**RESPONSE:** Plaintiffs do not know how Chrysler generates the documents it refers to as "LOIs."

29. The LOI template is the same for all LOIs to establish new franchises and requires the population of categories of dealer-specific information, such as the

9

geography of the dealer candidate, whether the dealer candidate already controls a facility that complies with New Chrysler's facility requirements, and New Chrysler's future plans for the dealer candidate's market.

**RESPONSE:** Plaintiffs do not know how Chrysler generates the documents it refers to as "LOIs." If the "template is the same," as Chrysler claims, it is manipulated by Chrysler employees to generate letters with significant variance on material issues. *See* Press Declaration, ¶s 4 - 15.

30. New Chrysler used this template, which it also uses in the ordinary course of its business for establishing new dealers, to generate the LOIs that New Chrysler delivered to Rejected Dealers.

**RESPONSE:** Plaintiffs do not know how Chrysler generates the documents it refers to as "LOIs."

31. The LOIs that New Chrysler delivered to Eagle and Terry in July 2010 were generated from the same template. *Id.* ¶ 12.

**RESPONSE:** Plaintiffs do not know how Chrysler generated the documents it refers to as "LOIs" that were sent to plaintiffs.

32. The LOIs that New Chrysler delivered to Eagle and Terry are materially identical to the LOI that New Chrysler delivered to Los Feliz and that the court in *Los Feliz* determined to be "customary and usual" as a matter of law. They are identical in all respects but for certain necessary, dealer-specific differences, such as building and showroom square footage. Terry's LOI differs from the LOIs delivered to Eagle and Los Feliz in only one further respect; paragraph 13 restricts Terry's waiver of any right to protest to a limited geographical area, while the Eagle and Los Feliz LOIs provide a more general waiver.

10

**RESPONSE:** Plaintiffs admit the letters they received are more or less identical to the letter Chrysler sent to Los Feliz. The court in that case, however, did not find the letters was "'customary and usual' as a matter of law." The court found there was no triable issue in that case, and that Chrysler was entitled to "judgment" as a matter of law.

33. Provisions that are substantially identical to those provisions in the Eagle and Terry LOIs that Eagle and Terry claim are not customary and usual appear in the vast majority of LOIs New Chrysler has issued to new dealers since its inception, including Rejected Dealers.

**RESPONSE:** Plaintiffs dispute these facts. Chrysler was a brand new start-up company in April 2009. It had no dealers. All of its current dealers were "new," and almost all of them received a form letter in May 2009 which informed them that the new company was going to accept an assignment of their franchise agreements with "Old Chrysler," and without any conditions. The dealers added since then have been added by way of letter agreements and other documents with such varying terms and conditions that no particular letter or document can be fairly characterized as a "usual and customary" letter. *See* Press Declaration.

34. In their Complaint and the Joint Pretrial Order, Plaintiffs challenge four provisions of their LOIs as not being "customary and usual." Plaintiffs have alleged that the following provisions in their LOIs are not "customary and usual":

    a. the provision in Paragraph 4 that New Chrysler "would 'give notice to the state and/or dealers as may be required by state law'" before entering into a franchise agreement;

    b. provisions in Paragraphs 6 and 8(A) requiring Eagle and Terry to "complete a facility renovation in a manner that has been solely prescribed by Chrysler;"

    c.    a requirement in Paragraph 8(H) that Eagle and Terry must "provide Chrysler with an option to lease or purchase the ... dealership facility;" and

    d.    the requirement in Paragraph 13 that Eagle and Terry must "waive certain rights that may be provided ... under applicable state motor vehicle franchise statutes[s] such as protest rights that [they] may possess in the event that a new dealer is added in [their] market area[s]."

**RESPONSE:**    Admitted.

35.    Plaintiffs allege that New Chrysler added these provisions to the LOI "solely to defeat" Plaintiffs' right under Section 747.

**RESPONSE:**    Admitted.

36.    The provisions in Paragraph 4 of the LOI offered to Eagle and Terry appear in 97% of the LOIs New Chrysler has offered to other dealer candidates.

**RESPONSE:**    Plaintiffs dispute this matter. Paragraph 4 of the letters give Chrysler the option to rescind the letters if an existing dealer files a statutory administrative protest to plaintiffs' addition, and the protest is not resolved within 30 days (a near impossibility). The letters sent to the other 80 arbitrating dealers had the same provision, but 39% of the letters sent to new dealer candidates in the "ordinary course" of Chrysler's business (i.e. letters sent to non-arbitrating dealers) had materially longer resolution periods of 60 or 90 days. *See* Press Declaration,

12

¶s 6 and 7.

37. The architecture requirements of Paragraph 6 of the Eagle and Terry LOIs appear in 90% of the LOIs offered to the other dealer candidates. The other facility requirements in Paragraph 6 of the LOIs offered to Eagle and Terry appear in 97% of the LOIs offered to other dealer candidates.

**RESPONSE:** Plaintiffs dispute these matters. The letters sent to the other 80 arbitrating dealers had the same provision, but 28% percent of the letters sent to new dealer candidates in the "ordinary course" either had no facility requirements or substantially less burdensome architectural requirements. Further, Chrysler entered into side deals with many of the arbitrating dealers which modified the facility requirements of the letter. *See* Press Declaration, ¶s 6 - 15.

38. The facility renovation requirement in Paragraph 8(A) of the Eagle and Terry LOIs appears in 91% of the LOIs offered to other dealer candidates; the lease requirements in Paragraph 8(D) of the Eagle and Terry LOIs appear in 100% of the LOIs offered to other dealer candidates; and the option to lease or purchase requirement in Paragraph 8(H) of the Eagle and Terry LOIs appears in 82% of the LOIs offered to other dealer candidates.

**RESPONSE:** Plaintiffs dispute these matters. Thirty-nine percent of the letters sent to new dealer candidates in the "ordinary course" had no site option granted to Chrysler. Further, ninety-two percent of the letters sent to the arbitrating dealers "pre-hearing" had an accompanying side letter that waived or offered to "waive the requirements to provide .... site option" if the dealership location was "rural." *See* Press Declaration, ¶s 6, 7 and 11.

13

39. The waiver of protest rights in Paragraph 13 of the Eagle and Terry LOIs appears in 70% of the LOIs offered to other dealer candidates. **RESPONSE:** Admitted.

40. Plaintiffs have also alleged that the LOIs New Chrysler offered were not "customary and usual" because they "would permit Chrysler to terminate the [LOI] and each of the Plaintiffs' rights to reinstatement on the basis of arbitrary and unlawful criteria entirely outside the Plaintiffs' control."

**RESPONSE:** Admitted.

41. In August 2010, New Chrysler issued to those Rejected Dealers that had obtained favorable decisions in Section 747 arbitrations and were offered customary and usual LOIs, including Eagle and Terry, a letter amendment modifying Paragraph 5 of their LOIs to remove the provision under which the LOI might have been terminated due to third-party protests. The challenged language therefore no longer appears in the LOIs.

**RESPONSE:** Plaintiffs dispute these facts. The offensive provision still "appears" in the LOIs. Chrysler's side letters contractually modified the LOI to remove that provision. Chrysler made numerous other such modifications to the LOI for other dealers, but Chrysler resisted plaintiffs' efforts to obtain discovery regarding those modifications. Chrysler claimed these modifications have no relevance to the issue of whether or not the letters issued to plaintiffs are "usual and customary." That argument was repeated in response to plaintiffs' recent motion to re-open discovery, which motion was denied.

14

Chrysler should not be allowed to rely on one particular modification to the LOI in support of its summary judgment motion, while failing to disclose all the other modifications and exceptions its has made to other dealers' letters. Plaintiffs should be allowed time to conduct discovery regarding other material modifications made by Chrysler, and thereafter supplement this response. Fed.R.Civ.Proc. 56(d) specifically authorizes such relief, and fairness dictates that it be granted in this circumstance.

Dated: Mineola, New York
June 15, 2012

>Respectfully,
>BELLAVIA GENTILE & ASSOCIATES, LLP
>
>BY: Steven Blatt, Esq. (SB 6792)
>Attorneys for Plaintiffs
>200 Old Country Road, Suite 400
>Mineola, NY 11501
>(516) 873-3000